No. 82–5632. BAKER *v.* MISSOURI. Sup. Ct. Mo. Certiorari denied. ▮

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428

U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

I continue to adhere to my view that the death penalty is unconstitutional in all circumstances, and would grant certiorari and vacate petitioner's death sentence on this basis alone. However, even if I accepted the prevailing view that the death penalty can constitutionally be imposed under certain circumstances, I would grant certiorari and vacate the death sentence because the Missouri Supreme Court improperly upheld the sentence on the basis of an aggravating circumstance that had never been considered by the sentencer.

## I

Petitioner Robert Baker was convicted of capital murder in the Circuit Court of the city of St. Louis. The victim, a police officer assigned as an undercover agent, was dressed in street clothes at the time of the shooting. When his body was discovered in the front seat of his unmarked police car, his police badge was in his wallet.

At the sentencing stage, the jury was instructed that it may impose the death penalty if it found that the murder "was committed against a peace officer while engaged in the performance of his official duty."[1] The jury was not instructed that it also had to find that petitioner knew or should have known that the victim was a police officer. The jury imposed the sentence of death solely on the basis of this aggravating circumstance.[2]

The Missouri Supreme Court affirmed the conviction and the death sentence, with two judges dissenting. 636 S. W.

---

[1] The statutory aggravating circumstance at issue in this case was as follows: "The capital murder was committed against any peace officer, corrections employee, or fireman while engaged in the performance of his official duty." Mo. Rev. Stat. § 565.012.2(8) (Supp. 1982).

[2] The existence of at least one statutory aggravating circumstance is necessary to authorize the imposition of the death sentence. § 565.012.5.

2d 902 (1982). The majority held that based on its review of the record "[t]he evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that appellant knew [the victim] was a police officer. *Jackson* v. *Virginia*, 443 U. S. 307 [(1979)]." *Id.*, at 907. It therefore "decline[d] to address the inscrutable question of *mens rea.*" *Ibid.*, citing *Morissette* v. *United States*, 342 U. S. 246 (1952); *Powell* v. *Texas*, 392 U. S. 514 (1968).

## II

The Missouri Supreme Court improperly affirmed the death sentence on a ground neither presented to nor found by the sentencing jury. The jury instruction authorized the imposition of the death sentence on the basis of a bare finding that the victim was a police officer on duty. The jury clearly did not base its imposition of the death sentence on a finding that petitioner knew or should have known the identity of his victim. In affirming the death sentence on the ground that there was sufficient evidence for a rational finder to find that petitioner had the requisite knowledge, the Missouri Supreme Court improperly relied on *Jackson* v. *Virginia*, 443 U. S. 307 (1979), which established a test for reviewing findings actually made, to "affirm" a finding that was not made.[3]

"[F]undamental principles of procedural fairness" prohibit a reviewing court from affirming a death sentence on the basis of an aggravating circumstance not properly found by the sentencing jury. *Presnell* v. *Georgia*, 439 U. S. 14, 16

---

[3] In so doing, the Missouri Supreme Court completely usurped the sentencing jury's function. Moreover, the reviewing court did not itself find that petitioner had the requisite knowledge, but simply held that if a jury had found that petitioner knew or should have known the identity of the victim, that hypothetical finding would be supported by sufficient evidence. As a result, petitioner's death sentence was imposed without an actual finding by any tribunal, least of all the jury that sentenced him, that petitioner knew or should have known that the victim was a police officer.

(1978).[4]   As Justice Black stated for a unanimous Court in *Cole* v. *Arkansas*, 333 U. S. 196, 202 (1948), "[t]o conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court." We have stated that this principle applies "with no less force at the penalty phase of a trial in a capital case than [it does] in the guilt-determining phase of any criminal trial." *Presnell* v. *Georgia, supra,* at 16.

Moreover, the death sentence in this case may not be upheld on the ground that it was properly imposed in the absence of a finding that petitioner knew or should have known the identity of his victim. If the Missouri statute does not require knowledge as an element of the aggravating circumstance charged in this case, its application in this case would violate the Constitution.

Petitioner received the death sentence solely because the victim of his crime was by chance an undercover police officer on duty. If his victim had been a private citizen as his appearance indicated,[5] the death sentence could not have been imposed under Missouri law. Nor can the death sentence be imposed on other persons who have committed or may com-

---

[4] Missouri law equally forbids the imposition of a death sentence based on aggravating circumstances that were not found by the jury. The Missouri Supreme Court is authorized to review "[w]hether the evidence supports the jury's or judge's *finding* of a statutory aggravating circumstance as enumerated in section 565.012." § 565.014.3(2) (1978) (emphasis added). Where the jury has not properly found the existence of a statutory aggravating circumstance, nothing in § 565.014 authorizes the Supreme Court to determine *de novo* whether such a finding should be or could have been made.

[5] It was "a disputed issue of fact" whether petitioner knew the identity of his victim. 636 S. W. 2d 902, 911 (1982) (Seiler, J., dissenting). Petitioner testified at the guilt stage of the trial that he did not know that the victim was a police officer, and "[e]ven in his first taped confession (the second was suppressed because of the beatings), there is *nothing to indicate* that defendant knew that the victim was a police officer on duty." *Ibid.* (emphasis added).

mit similar acts, and whose *conduct*, and *mens rea* are in all respects identical, but whose victims are private citizens. Petitioner has been singled out to receive the death sentence because of the "entirely fortuitous circumstance that the victim, who was dressed in civilian clothes and who to all appearances was a private citizen, turned out to be, unknown to [him], a police officer." 636 S. W. 2d, at 913 (Seiler, J., dissenting).

We have made clear that a State may not authorize the imposition of a death sentence on the basis of an arbitrary factor. While there is undoubtedly a difference between petitioner's case and cases in which the victims are private citizens, not every difference can justify a State's decision to execute a defendant. Instead, a constitutionally acceptable death penalty scheme must provide a *"principled* way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey* v. *Georgia*, 446 U. S. 420, 433 (1980) (plurality opinion) (emphasis added). See also *Proffitt* v. *Florida*, 428 U. S. 242, 258 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.) ("similar results . . . in similar cases"); *Furman* v. *Georgia*, 408 U. S. 238, 313 (1972) (WHITE, J., concurring) (*"meaningful* basis for distinguishing the few cases in which it is imposed from the many cases in which it is not") (emphasis added).

In my view the imposition of the death sentence based solely on the identity of the victim, unknown to the accused, would result in the ultimate punishment of death being meted out in an unprincipled fashion. The identity of the victim, standing alone, has nothing to do with an accused's blameworthiness.[6] In this case the State was not required to prove a single fact about petitioner indicating that he was any more deserving of a death sentence than any defendant convicted of murder. Nor is the goal of deterrence rationally

---

[6] Cf. *Enmund* v. *Florida*, 458 U. S. 782, 801 (1982) (death penalty must be imposed on the basis of "personal responsibility and moral guilt").

furthered, since the enhanced penalty for the killing of a police officer could not deter an individual who is ignorant of the identity of his victim.[7]

For the foregoing reasons, I would grant certiorari and vacate the death sentence in this case.

---

[7] This view is fully consistent with our decision in *Roberts* v. *Louisiana*, 431 U. S. 633 (1977) *(per curiam)*.   In striking down a statute which imposed a mandatory death sentence for the killing of a police officer, we acknowledged in *Roberts* that society has a "special interest in affording protection to these public servants who regularly must risk their lives in order to guard the safety of other persons and property." *Id.*, at 636 (footnote omitted).   Given the assumption, which I do not share, that the death penalty is constitutional under certain conditions, this interest may justify the State in treating the fact that the defendent knew his victim was a police officer as an aggravating circumstance in order to deter such killings, and to give effect to a State's judgment that the intentional killing of police officers is especially heinous.   Yet where the accused had no knowledge that his victim was a police officer, he was not "forewarned," *id.*, at 647 (REHNQUIST, J., dissenting), and therefore could not have been deterred by the possibility of an enhanced penalty for the killing of a police officer.   Moreover, it is irrational to treat as equally reprehensible the premeditated murder of a police officer, and the murder of someone who, unbeknownst to the accused, turns out to have been a police officer.   It is similarly irrational to treat differently two murderers simply because in one case the victim, unknown to the perpetrator, was a police officer.   Although several Members of the Court dissented in *Roberts* v. *Louisiana* and would have upheld Louisiana's mandatory death penalty statute, the Louisiana statute required that the accused have the "specific intent" to kill or seriously injure a police officer.   It was in this context that the dissenting opinions expressed support for a mandatory death penalty when the killing of a peace officer was "intentional," *id.*, at 642 (BLACKMUN, J., dissenting); *id.*, at 644, 648 (REHNQUIST, J., dissenting), or " deliberat[e]," *id.*, at 646, 647, 650; or "premeditated," *id.*, at 644, 649.