STATE of Missouri, Respondent,

v.

Richard ZEITVOGEL, Appellant.

No. 67198.

Supreme Court of Missouri,
En Banc.

March 25, 1986.

C.J. Larkin, Columbia, for appellant.

1. *See State v. Guinan,* 665 S.W.2d 325 (Mo. banc), *cert. denied,* — U.S. —, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

William L. Webster, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant, convicted by a jury of capital murder, § 565.001, RSMo 1978 (repealed effective October 1, 1984), was sentenced to death for the March 25, 1984, strangulation killing of his cellmate Gary Wayne Dew in the Missouri State Penitentiary. Because the death sentence was imposed, the cause falls within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, § 3. We affirm.

While defendant does not challenge the sufficiency of the evidence to support his conviction, we observe that from the evidence supportive of the verdict, the jury reasonably could have found the following: Sometime between noon and 1:00 p.m., on March 25, 1984, defendant killed his cellmate by strangulation with a double-strand wire. It was 4:30 p.m. before the defendant called a corrections officer to his cell and when the officer arrived, Zeitvogel told him, "I killed my cellie." Later, defendant stated that if he received the death penalty he could room with Frank Guinan[1] on death row. At the time of the murder, defendant was serving a life sentence without eligibility for probation or parole for fifty years for the prior killing of another inmate at a time when he (defendant) was incarcerated in Missouri State Penitentiary under earlier sentences for rape and armed robbery. *See State v. Zeitvogel,* 655 S.W.2d 678 (Mo.App.1983). The jury rejected defendant's claim of self-defense.

Seeking reversal of his conviction and remand for a new trial or alternatively remand for retrial of the punishment phase, defendant asserts as plain error the trial court's permitting the state to "death qualify" the jury, and plain error in the punishment phase instructions. Additionally, defendant maintains the death sentence was imposed under the influence of passion

and prejudice and that his sentence was excessive and disproportionate to that imposed in similar cases.

## I.

■ Defendant argues the general proposition that the trial court erred in sustaining state's challenges for cause of veniremen Johnson, Scott and Hoelscher (though they demonstrably disqualified during voir dire), because their exclusion resulted in a conviction-prone jury. This, he asserts, deprived him of a fair and impartial jury and one representative of a fair cross section of the community in violation U.S. Const. amends. VI and XIV, Mo. Const. art. I, § 5,[2] and § 546.130, RSMo 1978.[3] Because defendant lodged no objections to these actions of the trial court, our review is limited to examination for plain error to determine whether manifest injustice or a miscarriage of justice occurred. Rule 29.-12(b).

We have repeatedly rejected similar constitutional challenges to "death qualification" of juries, *see, e.g., State v. Jones,* 705 S.W.2d 19, 23–24 (Mo. banc 1986); *State v. Mathenia,* 702 S.W.2d 840, 844 (Mo. banc 1986); *State v. Foster,* 700 S.W.2d 440, 443 (Mo. banc 1985); *State v. Gilmore,* 697 S.W.2d 172, 175 (Mo. banc 1985); *State v. Nave,* 694 S.W.2d 729, 735–36 (Mo. banc 1985); *State v. Malone,* 694 S.W.2d 723, 726–27 (Mo. banc 1985); *State v. Kenley,* 693 S.W.2d 79, 82–83 (Mo. banc 1985), and decline defendant's invitation to overrule the prior decisions on point.

Turning to the voir dire of the array, the record provides ample evidence of the disqualification of the three stricken veniremen. Scott indicated that she could not impose the death penalty under any circumstances. Johnson stated that he could not impose a death sentence unless the victim was someone he knew such as a friend or relative, and admitted he did not know the victim here. While a review of the record reveals that Hoelscher did not express an inability to impose the death penalty, she, like Johnson, stated she could not sign a death penalty verdict if chosen to be foreman of the jury.

■ Johnson and Scott were excludable for their inability and unwillingness to consider the full range of punishment. *State v. Johns,* 679 S.W.2d 253, 265 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). We need not reach the question of whether Johnson and Hoelscher were excludable solely for their inability to sign a death penalty verdict should they be chosen foreman; however, such mental reservation and unwillingness to follow that requirement of the law reinforces the conclusion that they were otherwise disqualified. Finally it should be noted that defendant joined the state's challenge for cause as to Scott and Hoelscher. The state's basis for the challenge as to Scott was that she would apply an incorrect burden of proof, i.e. guilt beyond a shadow of a doubt. Additionally, Scott indicated that pressing personal matters would prevent her from deciding the case fairly, that she was uncomfortable with the role of sitting in judgment of her fellow man and that she would substitute her own procedure for determining guilt or innocence. Hoelscher admitted she could not give the state a fair trial because of an unsolved crime involving a family member and she

---

**2.** That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no human authority can control or interfere with the rights of conscience; that *no person shall, on account of his religious persuasion or belief,* be rendered ineligible to any public office of trust or profit in this state, *be disqualified from* testifying or *serving as a juror,* or be molested in his person or estate; but this section shall not be construed to excuse acts of licentiousness, nor to justify practices inconsistent with the good order, peace or safety of the state, or with the rights of others. Mo. Const. art. I, § 5 (emphasis added).

**3.** Persons whose opinions are *such as to preclude them from finding any defendant guilty* of an offense punishable with death, shall be ineligible to serve as jurors on the trial of an indictment or information charging any such offense, unless such disqualification is waived by the representative of the state when selecting the jury in any such case.
Section 546.130, RSMo 1978 (emphasis added).

also stated that she assumed defendant was guilty because he was in shackles and therefore she did not believe she could be fair and impartial.

■ Mindful that a trial court is to be "accorded wide discretion in ruling on challenge for cause and will not be overturned absent an abuse of that discretion," *State v. Pennington*, 642 S.W.2d 646, 649 (Mo. 1982), we find no abuse of discretion here. The trial court committed no error, plain or otherwise, when excusing the three named veniremen for cause.

## II.

Defendant next presents as plain error, the giving of certain instructions during the punishment stage. He first contends it was improper to submit *both* his substantial history of serious assaultive convictions and his prior capital murder conviction as statutory aggravating circumstances. Instruction # 18 directed that the jury could not consider the death penalty unless it found at least one of three statutory aggravating circumstances, two of which were:

1. Whether the defendant has a substantial history of serious assaultive convictions.

  \*    \*    \*    \*    \*    \*

3. Whether at the time of the murder of Gary Wayne Dew the defendant had been previously convicted of Capital Murder on March 3, 1982 in Randolph County, Missouri.

■ In § 565.012.2, RSMo Cum.Supp. 1983 (repealed effective October 1, 1984),[4] the legislature enumerates a series of aggravating circumstances, submissible by instructions if supported in the evidence, among which are the following:

(1) The offense was committed by a person with a prior record of conviction for capital murder, *or* the offense was committed by a person who has a sub-

stantial history of serious assaultive criminal convictions; (emphasis added)

  \*    \*    \*    \*    \*    \*

Defendant argues that Instruction # 18 improperly set forth two separate circumstances when only one was authorized by the statute, notwithstanding the fact that Instruction # 18 is taken directly from MAI–CR 15.40, the prescribed form for capital murder submissions for homicides committed after May 25, 1977. In effect he argues that the state could have selected one of the circumstances set forth in § 565.012.2(1) but not both, and in so doing violated the statute and produced an unconstitutional duplication. We disagree. A prime rule of statutory construction is to give effect to the legislative intent. *State v. Burnau*, 642 S.W.2d 621, 623 (Mo. banc 1982). A plain reading of § 565.012.2 is that in subparagraph (1) the legislature set forth two separate aggravating circumstances, each of which might be submitted for the jury's consideration. The legislative intent is clear, that a "prior record of conviction for capital murder" as well as a "substantial history of serious assaultive criminal convictions" are separate circumstances that may be submitted if sufficient evidentiary bases appear in the record. The two aggravating circumstances found in subparagraph (1) are not repetitive, instead each genuinely narrows the class of those eligible for the death penalty and either could reasonably justify imposition of a sentence of death as compared with other murders in which such circumstance or circumstances are not present. *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).

Defendant next contends it was improper to submit by Instruction # 19 defendant's five prior convictions as *non-statutory* aggravating circumstances in addition to his substantial history of serious assaultive convictions and his prior capital murder conviction as *statutory* aggravating circumstances by Instruction # 18. Instruc-

---

**4.** Repealed § 565.012 was supplanted by § 565.-032, RSMo Cum.Supp.1984, which retains without change subsection 2(1) except that it refers to murder in the first degree rather than capital

murder. Under present Missouri law, first degree murder is the only homicide offense for which the death penalty may be imposed. *See* § 565.020, RSMo Cum.Supp.1984.

tion # 19 directed that if the jury found at least one of the statutory aggravating circumstances submitted in # 18, they also could consider the following non-statutory aggravating circumstances:

1. Whether the defendant plead guilty to jail break and escape in the Circuit Court of Phelps County of Missouri.

2. Whether the defendant plead guilty to armed robbery in the Circuit Court of Pulaski County of Missouri.

3. Whether the defendant was convicted of rape in the Circuit Court of Pulaski County of Missouri.

4. Whether the defendant was convicted of assault first degree in the Circuit Court of Cole County of Missouri.

5. Whether the defendant was convicted of capital murder in the Circuit Court of Randolph County of Missouri.

■ Defendant argues submission of these non-statutory aggravating circumstances improperly duplicated statutory aggravating circumstances submitted in Instruction # 18. Again we must disagree. As previously discussed, submission of the statutory aggravating circumstances was authorized by § 565.012.2 when supported by the evidence. By the same token, the prior convictions as non-statutory aggravating circumstances were supported by the record and submission proper under §§ 565.012.1(3), 565.006.2, RSMo Cum. Supp.1983 (repealed effective October 1, 1984). We conclude that Instructions # 18 and # 19, taken together, genuinely narrowed the class of persons eligible for the death penalty. Moreover, to the extent that Instruction # 19 did in fact duplicate statutory aggravating circumstances submitted in Instruction # 18, such duplication was harmless error, if error at all. The duplication, unpreserved for appellate review, certainly did not rise to the level of plain error resulting in manifest injustice or a miscarriage of justice. By its verdict, the jury returned a finding of the three statutory aggravating circumstances submitted in Instruction # 18 and this finding rests on undisputed documentary evidence.

Further, regarding the "duplication" argument, though one of the circumstances (i.e. number five in Instruction # 19) was repetitive the sentence is nonetheless valid. We have held "[w]here two or more statutory aggravating circumstances are found by the jury, failure of one circumstance does not invalidate the other," *State v. Gilmore*, 697 S.W.2d at 176, and here the record clearly warranted submission of all the statutory and the non-statutory circumstances and it cannot be said that the single instance of duplication constituted prejudicial error, plain or otherwise.

■ Finally, defendant contends that it was improper to submit in Instruction # 18 as an additional statutory aggravating circumstance the following:

2. Whether at the time of the murder of Gary Wayne Dew the defendant was in the lawful custody of a place of confinement.

Defendant argues that this circumstance duplicated the statutory aggravating circumstance of his substantial history of serious assaultive convictions and the non-statutory aggravating circumstances of his prior convictions. Here, too, this separate aggravating circumstance was authorized by statute (§ 565.012.2(9)), supported by the evidence, and permissible under the law. However, defendant citing *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), argues that § 565.012.-2(9) violates U.S. Const. amends. VIII and XIV. Defendant also argues he is being twice punished for the prior crime for which he had been previously convicted and was still incarcerated. This contention is without merit. The fact that the murder was committed while defendant was confined is not improperly duplicative. The presentation of evidence of that fact is authorized by § 565.012.2 which sets forth the following as a pertinent aggravating circumstance:

(9) The capital murder was committed by a person in, ... the lawful custody of a ... place of lawful confinement;

\* \* \* \* \* \*

The self-apparent legislative concern expressed in § 565.012.2(9) is not only legitimate, but distinct from those expressed in § 565.012.2(1) relating to substantial history of serious assaultive convictions and is also distinct from other enumerated prior convictions.

Additionally, the action of the trial court in submitting the circumstance provided in § 556.012.2(9) is easily distinguishable from the controlling facts and applicable doctrine of *Robinson v. California.* Section 556.-012.2(9) does not make his "status" as an inmate a criminal offense, as the statute considered in *Robinson* made the "status" of narcotic addiction a criminal offense. Rather, the challenged subsection renders the murder of an inmate by one incarcerated a circumstance to be considered in determining whether to impose the death penalty for the discrete crime newly committed at a time when defendant happened to be confined in prison.

Such does not constitute cruel and unusual punishment, nor "doubly punish" defendant for the crime which caused his current imprisonment. There has been no violation of defendant's Eighth or Fourteenth Amendment rights.

### III.

■ Defendant further contends the sentence to death was imposed as a result of passion and prejudice engendered by presentation of the facts of his prior capital murder conviction "in unnecessary and vivid detail, concentrating on the heroism of the prison guards and the villainous behavior of the appellant."

During the punishment stage, the state presented testimony of the warden and a corrections officer regarding defendant's prior capital murder conviction and assault committed in the Missouri State Penitentiary.[5] The court also admitted records of defendant's prior convictions, including the previous capital murder and assault. Defendant argues that these exhibits without testimonial adornment were sufficient and

the evidentiary details should have been excluded. The point is not well taken. Evidence of the details of the offense were admissible as well as records of the convictions. Relevant evidence concerning those matters is not inadmissible merely because it tends to prejudice the defendant. *State v. Foster,* 700 S.W.2d at 444–45. The extent of examination was a matter within the sound discretion of the trial court.

### IV.

■ Finally, defendant contends the death sentence is excessive and disproportionate to the penalty imposed in similar cases. Cases relevant for review are those in which the judge or jury determined the defendant guilty of capital murder and thereafter chose between death or life imprisonment. *State v. Bolder,* 635 S.W.2d 673, 685 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). We conclude the penalty imposed is neither excessive nor disproportionate to the penalties imposed in similar cases, considering the crime and the defendant. Here, the murder was within a penal institution by a convict already sentenced to life imprisonment for the killing of another inmate. On four previous occasions we have affirmed death sentences where the murder was committed by a person in the lawful custody of a place of lawful confinement. *State v. Guinan,* 665 S.W.2d 325 (Mo. banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw,* 636 S.W.2d 667 (Mo. banc), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *State v. Bolder,* 635 S.W.2d 673. Additionally, we note three pending cases wherein the jury imposed the death penalty involved the same aggravating circumstance. *State v. Roberts,* No. 66933 (Mo. banc argued Jan. 15, 1986); *State v. Dris-*

---

**5.** *See State v. Zeitvogel,* 655 S.W.2d 678 (Mo. App.1983) (capital murder); *State v. Zeitvogel,*

649 S.W.2d 945 (Mo.App.1983) (first-degree assault).

*coll,* No. 66852 (Mo. cause pending); *State v. O'Neal,* No. 67142 (Mo. cause pending).[6] In contraposition to the above seven cases, there have been four previous occasions where juries have rejected the death penalty and imposed a life sentence where the same aggravating circumstance was involved. *State v. Carr,* No. 14353 (Mo. App. cause pending); *State v. Stewart,* No. 49543 (Mo.App. cause pending);[7] *State v. Hurt,* 668 S.W.2d 206 (Mo.App.1984); *State v. Zeitvogel,* 655 S.W.2d 678. Suffice it to say that in none of the latter four was there the additional statutory aggravating circumstance of a prior capital murder conviction. The Court's comment in *Bolder,* 635 S.W.2d at 690, is appropriate here: "The life sentence that appellant is already serving for [capital] murder did not deter appellant from committing still another murder. The imposition of yet another life sentence would serve no purpose other than to signal that there is no real cost for prisoners who kill while in confinement."

### V.

We have considered and ruled on the points raised by defendant and in our review of the record, determine that: the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; the evidence supports the jury's finding of a statutory aggravating circumstance as enumerated in § 565.012; and the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime and the defendant. Section 565.014, RSMo 1978 (repealed effective October 1, 1984; currently § 565.035, RSMo Cum.Supp.1984).

Judgment affirmed.

All concur.

**6.** We consider these cases only to determine what penalties juries have imposed in factually similar situations. *See State v. Bolder,* 635 S.W.2d 673, 690 n. 15 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d

983 (1983). In so doing we intimate no view as to their ultimate disposition.

**7.** *See supra* note 6.