**STATE of Missouri, Respondent,**

v.

**Robert O'NEAL, Appellant.**

No. 67142.

Supreme Court of Missouri,
En Banc.

Oct. 14, 1986.

Rehearing Denied Nov. 18, 1986.

David E. Woods, Public Defender, Poplar Bluff, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Robert Earl O'Neal, Jr., was convicted of capital murder,[1] § 565.001,[2] RSMo 1978,[3] on March 22, 1985. After finding aggravating circumstances, as required by § 565.012,[4] the jury imposed a sentence of death. Appellant appeals from the conviction and sentence.

This court has exclusive appellate jurisdiction in capital murder cases in which the penalty of death is imposed. Mo. Const. art. V, § 3. We affirm both the judgment and the sentence.

---

1. **565.001. Capital murder defined**
   Any person who unlawfully, willfully, knowingly, deliberately and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.

2. Repealed October 1, 1984, currently § 565.020, RSMo Cum.Supp.1984.

3. All statutory references herein are to RSMo 1978, unless otherwise indicated.

4. Repealed October 1, 1984, currently § 565.032, RSMo Cum.Supp.1984.

## I

In February 1984, appellant was an inmate at the Missouri State Penitentiary in Jefferson City and was assigned to Building 5–A of the Special Management Unit, the super-maximum security housing facility within the penitentiary. Building 5–A is divided into eight "walks" or rows of cells on four levels. Each walk is self-contained and is accessible only through a single secured gate. Building 5–A inmates are generally locked in their cells at all times except mealtimes. Appellant and co-defendants Lloyd Schlup[5] and Rodnie Stewart[6] lived on 2 walk, while the murder victim, Arthur Dade, lived on the same level, on 1 walk. Appellant and Schlup were identified as followers of the Aryan Nation's Church, a white supremacist organization. Dade was a dominating black inmate.

At approximately noon on February 23, 1984, the inmates on walks 1 through 4 were released for lunch. While the other inmates were walking towards the dining hall in Building 5–C, corrections officers observed appellant and his codefendants running towards 1 walk, away from Building 5–C and against the flow of inmate traffic. Appellant and codefendant Schlup proceeded past the 1 walk security gate, while codefendant Stewart waited just outside the gate with a pint-sized ice cream receptacle containing what appeared to be a steaming liquid. Dade was walking, unarmed, towards the dining hall and was near the 1 walk gate when Stewart threw the contents of the ice cream container into Dade's face, causing Dade to raise his hands to his face. Schlup then jumped on Dade from behind, grabbing and restraining Dade's arms. Appellant drew a twelve-inch homemade weapon resembling an ice pick, ran forward, and stabbed Dade four times, penetrating his heart and lungs. Dade ran the short distance to the entrance of 1 walk, collapsed and died. Dade had made no hostile moves towards either appellant or his codefendants.

A corrections officer arrived and restrained Stewart. Appellant ran down 1 walk, broke a window with his hand, and threw out the weapon which he had used to stab Dade, lacerating the back of his right hand. Appellant then washed his hands and arms of blood at a nearby sink. He walked quickly to the dining hall and briefly sat down before entering the dining hall bathroom.

Penitentiary officials examined the bathroom after appellant exited and before anyone else entered and found a pair of bloodstained pants with appellant's current and previous cell assignment numbers, a pair of gloves, and a significant amount of blood on the floor and walls. Bloodstains found on the victim's clothing, appellant's clothing, the broken window glass, the basin in which appellant washed his hands, and the clothing discarded in the bathroom were each determined to be consistent with appellant's blood.

At trial, appellant and his nine inmate witnesses, most of whom were identified as fellow followers of the Aryan Nation's Church, testified that Dade had attacked appellant and that he killed Dade in self-defense. The jury found appellant guilty of capital murder. The jury found two aggravating circumstances, that the murder occurred in a correctional institution and that appellant had a substantial history of serious assaultive conduct. The jury imposed a sentence of death. We examine the material points raised by appellant.

## II

First we consider appellant's allegation that the selection of the grand jury, pursuant to § 540.020, violated his federal and state constitutional rights. Selection of grand jurors by a sheriff, sometimes described as the "key man" system, is not

---

5. Schlup was convicted of capital murder and sentenced to death. *State v. Schlup*, No. 68029 (Mo. banc argued October 1, 1986).

6. Stewart, also known as Herbert Chastain, was convicted of capital murder and sentenced to life imprisonment without parole for fifty years. *State v. Stewart*, 714 S.W.2d 724 (Mo.App.1986).

facially unconstitutional. In order to demonstrate unconstitutional application of such a statute, the accused must demonstrate substantial underrepresentation of a distinctive group to which he belongs. *Castaneda v. Partida,* 430 U.S. 482, 497, 97 S.Ct. 1272, 1281, 51 L.Ed.2d 498 (1977); *State v. Baker,* 636 S.W.2d 902, 907–10 (Mo. banc 1982), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983); *State v. Garrett,* 627 S.W.2d 635, 638 (Mo. banc 1982), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Appellant has failed to show any group was underrepresented on the grand jury. Nor has appellant demonstrated any other impropriety in the grand jury selection. We find no error in the grand jury selection process employed in this case.

### III

■ Appellant argues that the selection of special venirepersons for the petit jury, as allowed by § 494.250, RSMo.Cum. Supp.1984, violated his federal constitutional rights. The selection statute is not facially unconstitutional. *State v. Anderson,* 620 S.W.2d 378 (Mo.1981). When a sheriff involved in the investigation selects the venirepersons, the defendant's rights are violated. *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir.1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). Unlike *Henson,* in this case the sheriff's department had no involvement in the investigation and prosecution, due to a change of venue. The *Henson* prohibition is inapplicable. *Russell v. Wyrick,* 736 F.2d 462, 463–64 (8th Cir.1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985). The personal acquaintance of sheriff's department personnel with two of the chosen venirepersons does not invalidate the panel of special venirepersons. *Henson,* 634 F.2d at 1084. No error resulted in the selection of the special venirepersons.

### IV

■ Appellant argues that the venirepersons should have been examined individually during voir dire rather than split into two groups. This Court previously has held that when the trial court permitted the division of the panel into two groups for voir dire examination, "[t]his procedure was within the trial court's discretion." *State v. Guinan,* 665 S.W.2d 325, 329 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984) (citation omitted). The trial court did not abuse its discretion in allowing voir dire in two groups rather than requiring individual voir dire.

### V

Appellant argues that the trial court erred in allowing death qualification of the jury panel.

"The exclusion of prospective jurors who indicate they would not consider imposing the death penalty has been held to be constitutional by the Supreme Court. *Lockett v. Ohio,* 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978). We consistently have approved challenging for cause prospective jurors who indicate that they cannot impose the death sentence. *State v. Gilmore,* 697 S.W.2d 172 (Mo. banc 1985), *cert. denied,* [—— U.S. ——] 106 S.Ct. 2906 [90 L.Ed.2d 992] (1986); *State v. Malone,* 694 S.W.2d 723 (Mo. banc 1985), *cert. denied,* [—— U.S. ——] 106 S.Ct. 2292 [90 L.Ed.2d 733] (1986); *State v. Johns,* 679 S.W.2d 253 (Mo. banc 1984), *cert. denied,* [470 U.S. 1034] 105 S.Ct. 1413 [84 L.Ed.2d 796] (1985).

*State v. Boliek,* 706 S.W.2d 847, 849 (Mo. banc 1986). *See Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The trial court did not abuse its discretion in allowing voir dire examination concerning the venirepersons' ability and willingness to consider a penalty of death.

### VI

■ Appellant argues that venireperson Carl was struck for cause improperly. A venireperson should be struck for not considering the death penalty if his views "would 'prevent or substantially impair the performance of his duties as a juror in

accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), quoting *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Mrs. Carl stated, concerning her ability to impose the death penalty, "I could not sit here and say that I really, you know, that I could ... I just don't think ... that I could feel right with myself for being the one that has to do it." The evidence supports the finding that Mrs. Carl's views would have "substantially impaired" her ability to impose a sentence of death. The trial court did not abuse its discretion in striking for cause venireperson Carl.

### VII

■ Appellant contends that the trial court erred in disallowing separate juries for the guilt and punishment phases of the trial. Section 564.030, RSMo Cum.Supp. 1984, provides for a single jury to decide both phases of the trial. The United States Supreme Court has upheld a statutory scheme providing for a single jury to determine both guilt and punishment. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). This Court has stated that there is "no constitutional infirmity in Missouri's statutory scheme providing for a single jury to determine guilt and punishment in a bifurcated trial." *State v. Guinan,* 665 S.W.2d 325, 330 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). The trial court did not err in not allowing a separate jury for the punishment phase of the bifurcated trial.

### VIII

■ Appellant contends that the trial court erred in failing to strike for cause a venireperson with a hearing problem.

"It is well settled that the trial court has vast discretion in ruling on a challenge of a venireman for cause and its decision should not be disturbed except for a clear abuse of discretion." *State v. Treadway,* 558 S.W.2d 646, 649 (Mo. banc 1977), *cert. denied,* 439 U.S. 838 [99 S.Ct. 124, 58 L.Ed.2d 135] (1978); *State v. Cuckovich,* 485 S.W.2d 16, 22 (Mo. banc 1972).

*State v. Christian,* 604 S.W.2d 758 (Mo. App.1980). In this case the judge questioned the venireperson and was satisfied that the hearing problem would not interfere with the venireperson's ability to sit as a juror. We find no abuse of discretion.

### IX

■ Appellant alleges that the trial court abused its discretion in denying his motion for the jurors to inspect the scene of the crime. "The question of whether or not the jury should be permitted to go outside the courtroom to view relevant evidence which cannot be brought to the courtroom is one for the trial court in the exercise of its discretion." *State v. McAnulty,* 491 S.W.2d 259, 261 (Mo.1973) (citation omitted). In the instant case, numerous photographs and diagrams accurately depicted the scene of the crime. Requiring the jury to travel from Butler County to the Missouri State Penitentiary in Jefferson City would have been disruptive, burdensome, and potentially dangerous. The trial court did not abuse its discretion in denying the motion for the jury to inspect the scene of the crime.

### X

■ Appellant contends that the trial court erred in not allowing his inmate witnesses to wear civilian clothes and in granting the State's request that appellant and his inmate witnesses be placed in restraints throughout the trial. The use of restraints and prison clothing for courtroom security purposes is within the discretion of the trial court. *State v. Bolder,* 635 S.W.2d 673, 687 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 893 (1983). In the instant case, the crime was committed in the prison and all of appellant's witnesses were prisoners and were housed in the super-maximum security Special Management Unit. The witnesses had been convicted of many serious felonies

including murder, kidnapping and escape.[7] Appellant previously had been convicted of murder, armed criminal action, assault and two counts of offering violence to a corrections officer. Given the multiple convictions of appellant and his inmate witnesses, the trial court did not abuse its discretion in requiring restraints on appellant and prison garb and restraints on the witnesses.

## XI

■ Appellant argues that the trial court erred in overruling his objection and permitting the State to cross-examine appellant and his witnesses concerning their first disclosure of the self-defense story. "A defendant who elects to testify in his own behalf may be contradicted and impeached as any other witness." *State v. Murphy*, 592 S.W.2d 727, 731 (Mo. banc 1980) (citations omitted). "The extent of cross-examination rests largely in the discretion of the trial court and an appellate court will not interfere unless the discretion is abused." *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. banc 1979) (citation omitted). In this case, the questioning was relevant in determining the veracity of the self-defense testimony. The trial court did not abuse its discretion in allowing such cross-examination.

## XII

■ Appellant contends that the trial court erred in admitting evidence concerning his and his witnesses' membership in the Aryan Nation's Church.

"Evidence is relevant if the fact it tends to prove or disprove is a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. Before evidence can be excluded on the ground that it is irrelevant, it is essential that it appears so beyond doubt."

*State v. Sanderson*, 528 S.W.2d 527, 531 (Mo.App.1975). Appellant's membership in the Aryan Nation's Church, a white supremacist organization, might tend to prove a motive for the murder of Dade, a dominating black inmate. The defense witnesses' membership therein might tend to demonstrate bias towards appellant and reflect upon the truth of the evidence elicited from them that the killing was committed in self-defense. The trial court did not abuse its discretion in admitting the evidence.

## XIII

Appellant, in his pro se brief, claims that § 565.012.2(9) violates his Fourteenth Amendment rights to equal protection and due process. Section 565.012.2(9) provides that capital murder within a lawful place of confinement is an aggravating circumstance for which the death penalty may be imposed. This Court has expressed its approval of this aggravating circumstance on numerous occasions. *State v. Driscoll*, 711 S.W.2d 512 (Mo. banc 1986); *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986); *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble*, 638 S.W.2d 726 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1983); *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982). There is no error.

## XIV

We have carefully reviewed all the remaining allegations of error made by appellant's counsel and all the remaining allegations set forth in appellant's pro se brief and we find them to be vague, duplicative and totally without merit.

---

**7.** During the trial, a handcuff key was found in the pocket of one of the inmate witnesses, indicating a possible escape plan.

## XV

We now turn to our statutorily mandated duty to independently review the imposition of the death sentence. § 565.014.[8]

There is neither allegation nor indication that the death sentence was imposed under the influence of passion, prejudice, or any other contributing factor. An independent review convinced us that the sentence was not imposed under the influence of passion, prejudice, or any other contributing factor.

■ We next consider whether there are sufficient aggravating circumstances as required by § 565.012.[9] It is undisputed that appellant had a "substantial history of serious assaultive criminal convictions" and that the murder took place in the state penitentiary, a place of lawful confinement. We conclude that there was sufficient evidence for the jury to find the existence of both of the aggravating circumstances.

Finally, we must consider "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." § 565.014.3(3). We have reviewed the propriety of the imposition of the sentence of death for murders occurring within correctional institutions on prior occasions and have found the sentence to be neither excessive nor disproportionate in such cases. *State v. Driscoll*, 711 S.W.2d 512 (Mo. banc 1986); *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986); *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble*, 638 S.W.2d 726 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw*, 636

S.W.2d 667 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1983); *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982).

Those imprisoned for violating our laws have cast upon the state both the expense of, and the responsibility for, their safe care while in confinement. We have always held the state to the highest standards in the exercise of that responsibility. Those for whom the state must bear responsibility should be held to an equally high standard of conduct. We are unaware of either sound reason or social policy for excusing the senseless killing of either fellow prisoners or corrections officers.

*State v. Shaw*, 636 S.W.2d 667, 677 (Mo. banc 1982).

■ This case is much like *Bolder*, where we said, "[t]he life sentence that appellant is already serving for first degree murder did not deter appellant from committing still another murder. The imposition of yet another life sentence would serve no purpose other than to signal that there is no real cost for prisoners who kill while in confinement." *State v. Bolder*, 635 S.W.2d 673, 690 (Mo. banc 1982) (footnote omitted). The sentence of death in this case is neither disproportionate nor excessive.

The judgment and sentence of death are affirmed.

HIGGINS, C.J., and BILLINGS, DONNELLY, ROBERTSON and RENDLEN, JJ. concur.

BLACKMAR, J. concurs in separate opinion filed.

---

**8.** Repealed October 1, 1984; currently § 565.-035, RSMo Cum.Supp.1984.

564.014.3 With regard to the sentence, the supreme court shall determine:

    (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

    (2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 565.012; and

    (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

**9.** Repealed October 1, 1984, currently § 565.032, RSMo Cum.Supp.1984.

**505**

BLACKMAR, Judge, concurring.

I concur, and write separately only because of two reservations.

### I.

The record shows that the grand jurors were individually selected by the Sheriff of Cole County pursuant to § 540.020.1, RSMo 1978.

Decisions sustaining the "key man" system of grand jury selection, as set out in the principal opinion, do not refer to selections made by the sheriff of the county in which the offense was committed. In *State v. Bynum*, 680 S.W.2d 156 (Mo. banc 1984) we held that when the sheriff made individual selection of replacement petit jurors, and exercised judgment in making these selections, the resulting jury was infirm. I do not believe that this holding has any application to the selection of grand jurors. The grand jury is an inquisitorial body which has no part in the trial. I agree with the principal opinion that the defendant cannot complain of the selection of grand jurors by the sheriff, without showing discrimination or impropriety in the selection process. It may also be of significance that, although the offense occurred in Cole County, it took place within the confines of the penitentiary, where the sheriff has minimal responsibility.

### II.

I can see dangers in permitting the free use of evidence such as that involving membership in the "Aryan Nation's Church." I doubt that the prosecutor needed this evidence in order to show motive when the evidence of a willful, deliberate and premeditated killing was so overwhelming. There are dangers in proceeding on a "guilt by association" theory, and in the apparent assumption that a member of a white supremacist organization would have a motive for murdering a black person. Few carry their racial prejudice that far. But the record in this case is such that I sense no prejudice in the trial result.