STATE of Missouri, Respondent,

v.

Frank Joseph GUINAN, Appellant.

No. 68744.

Supreme Court of Missouri,
En Banc.

June 16, 1987.

Rehearing Denied July 14, 1987.

Dennis D. Goodden, Office of Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Frank Joseph Guinan, was convicted of first degree murder, §§ 565.-020, RSMo 1986,[1] on June 4, 1986. After finding aggravating circumstances as required by § 565.032, RSMo 1986,[2] the jury imposed a sentence of death. Appellant appeals from the conviction and sentence.

This Court has exclusive appellate jurisdiction in all cases in which the penalty of death is imposed. Mo. Const. art. V, § 3. We affirm both the judgment and the sentence.

## I

Appellant Frank Guinan,[3] codefendant Gerald Smith,[4] and victim Robert Baker[5] were all under sentence of death and inmates in Housing Unit 3–C North at the Missouri State Penitentiary, on Missouri's "death row."

Housing Unit 3–C North consists of fifteen single-occupancy cells on an inner hallway or "walk." The inner walk and its cells are separated from an outer walk by a set of two doors which are manually locked by the guards. At least one of the doors between the inner and outer walks is kept locked except when the "walk men," the two inmates selected for daily cleaning and food distribution duty, are working. Off of the outer walk is the "law cage," a room with a locking door in which inmates with permission do legal work and consult with other inmates on legal matters.

On November 29, 1985, Gerald Smith and Emmett Nave[6] were selected as the "walk men." At approximately 10:00 a.m., Nave requested permission to consult with the victim, Robert Baker, in the law cage. Baker requested that Robert Driscoll[7] be permitted to consult with Nave and him in the law cage. Appellant claimed he wanted to clean his rugs and requested that he be allowed to replace Nave as a walk man. After Baker, Driscoll, and Nave were led to and locked into the law cage, appellant and codefendant Smith were released from their cells as the "walk men."

At approximately 10:35 a.m., corrections officers removed inmate Roy Roberts[8] for photography. When the correction officers left with inmate Roberts, they left the doors between the inner and outer walks open and unlocked, since the "walk men" were working.

At approximately 10:45 a.m., the corrections officers were informed that Baker wished to return to his cell from the law cage. In preparation for removing Baker, the officers handcuffed Baker and Driscoll behind the backs and through the locked law cage door. The officers did not handcuff Nave, as he was to return to "walk man" duty. Before unlocking the law cage, the officers verified that one of the doors between the inner and outer walks was closed and appellant and codefendant Smith were waiting nearby on the other side of the door, in the inner walk. The officers unlocked the law cage and inmates Nave and Driscoll started out the door. Appellant then opened the door between the inner and outer walks, which had been neither closed nor locked by corrections officers, and ran towards Baker, shoving him back into the law cage. Codefendant Smith followed closely behind appellant,

---

**1.** **565.020. First degree murder, penalty.** 1. A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter. 2. Murder in the first degree is a class A felony, except that the punishment shall be either death or imprisonment for life without eligibility for probation or parole, or release except by act of the governor.

**2.** All statutory references herein are to RSMo 1986, unless otherwise indicated.

**3.** *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984).

**4.** *State v. Smith,* 649 S.W.2d 417 (Mo. banc 1983).

**5.** *State v. Baker,* 636 S.W.2d 902 (Mo. banc 1982), *cert. denied,* 459 U.S. 1183 (1983).

**6.** *State v. Nave,* 694 S.W.2d 729 (Mo. banc 1985).

**7.** *State v. Driscoll,* 711 S.W.2d 512 (Mo. banc 1986).

**8.** *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986).

knocking a corrections officer to the floor on his way into the law cage. Appellant and codefendant Smith both drew homemade knives and repeatedly stabbed Baker, who was still handcuffed behind his back. Baker fell to the floor while appellant and Smith continued to stab him in the side and back and kick him in the abdomen. During the attack, appellant yelled obscenities and racial slurs at the victim, who was a black inmate.

During the incident, corrections officers closed and locked the door to the law cage. While awaiting assistance, they repeatedly ordered appellant and Smith to stop. The officer in charge of the unit arrived and ordered them to stop. After stabbing and kicking Baker one or two more times, appellant and Smith relinquished their weapons. Baker died shortly thereafter as a result of over 50 stab wounds.

At trial, appellant claimed self-defense. The jury found appellant guilty of first degree murder. After finding as aggravating circumstances that the appellant committed the crime while in a place of lawful confinement, that the murder was outrageously and wantonly vile, horrible or inhuman in that it involved torture or depravity of mind, and that appellant had been previously convicted of numerous other violent crimes, including capital murder, the jury imposed a sentence of death.

## II

Appellant contends that the trial court erred in striking for cause venirepersons who would not consider imposing a sentence of death.

> The exclusion of prospective jurors who indicate they would not consider imposing the death penalty has been held to be constitutional by the Supreme Court. *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973]. We consistently have approved challenging for cause prospective jurors who indicate that they cannot impose the death sentence. *State v. Gilmore*, 697 S.W.2d 172 (Mo. banc 1985), *cert* denied, [— U.S. ——] 106 S.Ct. 2906 [90 L.Ed.2d 992] (1986); *State v. Malone*, 694 S.W.2d 723 (Mo. banc

1985), *cert. denied*, [— U.S. ——] 106 S.Ct. 2292 [90 L.Ed.2d 733] (1986); *State v. Johns*, 679 S.W.2d 253 (Mo. banc 1984), *cert. denied* [470 U.S. 1034] 105 S.Ct. 1413 [84 L.Ed.2d 796] (1985). *State v. Boliek*, 706 S.W.2d 847, 849 (Mo. banc 1986).

*State v. O'Neal*, 718 S.W.2d 498, 501 (Mo. banc 1986). *See Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

■ The trial court did not abuse its discretion in striking for cause venirepersons who could not impose the death sentence.

## III

■ Appellant contends, both through counsel and in his pro se brief, that the trial court erred in denying his pretrial motion to attend the trial without shackles and chains. The use of restraints for courtroom security is within the discretion of the trial court. *State v. O'Neal*, 718 S.W.2d 498, 502–03 (Mo. banc 1986); *State v. Bolder*, 635 S.W.2d 673, 687 (Mo. banc 1982). Appellant had been previously convicted of capital murder and thirteen other felonies, including two counts of escape. Under these circumstances, the trial court did not abuse its discretion in requiring restraints on the appellant for courtroom security. *State v. O'Neal*, 718 S.W.2d at 502–03.

## IV

■ Appellant claims that the trial court erred in refusing to provide separate juries for the guilt and punishment phases of the trial. Section 565.030.2 provides: "Where murder in the first degree is submitted to the trier without waiver of the death penalty, the trial shall proceed in two stages, *before the same trier."* (Emphasis added.) In *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court upheld a statute providing a single jury to determine both guilt and punishment. "This Court has stated that there is 'no constitutional infirmity in Missouri's statutory scheme providing for a single jury to determine guilt and punish-

ment in a bifurcated trial.' *State v. Guinan*, 665 S.W.2d 325, 330 (Mo. banc 1984), *cert. denied*, 469 U.S. 873 [105 S.Ct. 227, 83 L.Ed.2d 156] (1984)." *State v. O'Neal*, 718 S.W.2d at 502. The trial court did not err in refusing to grant appellant's request for separate juries for the guilt and punishment phases of the trial.

## V

■ Appellant, in his pro se brief, challenges the constitutionality of § 565.032.-2(9), which provides commission of the murder by a person in a place of lawful confinement is an aggravating circumstance. This Court has repeatedly upheld the constitutionality of this aggravating circumstance. *State v. O'Neal*, 718 S.W.2d at 503; *State v. Driscoll*, 711 S.W.2d 512 (Mo. banc 1986); *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986); *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984), *cert denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble*, 638 S.W.2d 726 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1983); *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982). There is no constitutional infirmity in § 565.032.2(9).

## VI

Appellant contends that the "firmly convinced" language of MAI–CR2d 2.20 unconstitutionally diminishes the meaning of reasonable doubt in violation of due process.

MAI–CR2d 2.20 [9] provides

The charge of any offense is not evidence, and it creates no inference that any offense was committed or that (the) (either) (any) defendant is guilty of an offense.

(The) (Each) defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that (the) (either) (any) defendant is guilty.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you *firmly convinced* of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are *firmly convinced* that (a) (the) defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

(Emphasis added.) A similar definition is employed in the federal courts.[10]

"[A] single instruction to a jury may not be viewed in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973).

MAI–CR2d 2.20 clearly instructs the jury that the defendant "is presumed to be innocent," and that the presumption places on the state the burden of proving the guilt beyond a reasonable doubt. MAI–CR2d 2.20 also defines a reasonable doubt as "a doubt based upon reason and common

9. MAI–CR2d 2.20 was amended on August 13, 1984, and became mandatory, as amended, in all criminal cases on October 1, 1984. MAI–CR2d 2.20 is designed to comply with § 546.-070(4), RSMo 1986, which was revised effective October 1, 1984, to require that the jury in every criminal case be instructed on the definition of "reasonable doubt."

10. The federal definition states, in pertinent part:

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.... If, based on your consideration of the evidence, you are *firmly convinced* that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think that there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Federal Judicial Center Committee To Study Criminal Jury Instructions, *Pattern Criminal Jury Instruction* No. 21 (Federal Judicial Center 1982) (emphasis added).

sense after careful and impartial consideration of all the evidence in the case."

■ We find that, when read as a whole, MAI–CR2d 2.20 properly instruct the jury upon the standard which they are to use in determining the defendant's guilt or innocence.

## VII

We now turn to our statutorily mandated review of the imposition of the death sentence. § 565.035.

■ There is neither allegation nor indication that the death sentence was imposed under the influence of passion or prejudice. After independent review, we find that the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

■ The jury found as aggravating circumstances that the murder was committed by a person in a lawful place of confinement, that the defendant had a prior conviction for capital murder and other serious assaultive convictions, and that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind. None of these aggravating circumstances is disputed. After independent review, we find that there is sufficient evidence for each aggravating circumstance.

■ Finally, we must consider "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant." § 565.035.3(3). The sufficiency of the evidence is not in dispute. After independent review, we find the strength of the evidence to be overwhelming. We have repeatedly reviewed the propriety of the death sentence for murders committed in correctional institutions. We have held the death sentence to be neither excessive nor disproportionate in such cases. *State v. Schlup,* 724 S.W.2d 236 (Mo. banc 1987); *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986); *State v. Driscoll,* 711 S.W.2d 512 (Mo. banc 1986); *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986); *State v. Zeit-*

*voegl,* 707 S.W.2d 365 (Mo. banc 1986); *State v. Guinan,* 665 S.W.2d 325 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. Trimble,* 638 S.W.2d 726 (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983); *State v. Shaw,* 636 S.W.2d 667 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1983); *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982).

> Those imprisoned for violating our laws have cast upon the state both the expense of, and the responsibility for, their safe care while in confinement. We have always held the state to the highest standards in the exercise of that responsibility. Those for whom the state must bear responsibility should be held to an equally high standard of conduct. We are unaware of either sound reason or social policy for excusing the senseless killing of either fellow prisoners or corrections officers.

*State v. Shaw,* 636 S.W.2d 667, 677 (Mo. banc 1982).

The judgment and sentence of death are affirmed.

All concur.