Robert Earl O'NEAL, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. 70716.

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.

Rehearing Denied March 14, 1989.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Chief Justice.

Appellant Robert Earl O'Neal, Jr., lodged this appeal from the trial court's denial of his post-conviction motion under *Rule 27.26* wherein he sought relief from a death sentence for capital murder: *State v. O'Neal,* 718 S.W.2d 498 (Mo. banc 1986), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987). The trial court conducted an evidentiary hearing and made and entered findings of fact, conclusions of law, and entered judgment denying appellant's motion. Affirmed.

Initially, the Court notes that appellant's *pro se* motion, first amended motion and addendum thereto, alleged grounds consisting of trial errors and approximately a dozen charges that his trial attorney was ineffective—because of various derelictions. The trial judge hearing appellant's motion considered and ruled, adversely to appellant, each asserted ground. Because only two claims of ineffective assistance of counsel have been presented for appellate review in this appeal, appellant's other grounds are deemed abandoned. *Herron v. State,* 498 S.W.2d 530 (Mo.1973); *Camillo v. State,* 555 S.W.2d 386 (Mo.App.1977); *State v. Crow,* 514 S.W.2d 13 (Mo.App. 1974).

In *Sanders v. State,* 738 S.W.2d 856 (Mo. banc 1987), this Court reviewed the applicable rules to guide appellate review of the now common claim of ineffective assistance of counsel in postconviction proceedings. The Court said:

The Sixth Amendment guarantees the right to effective assistance of counsel. And, while this allegation is commonly found in proceedings attacking both guilty pleas and trial convictions, a movant is faced with what has often been called a 'heavy burden'. *Jones v. State,* 598 S.W.2d 595, 597 (Mo.App.1980). Not only must the movant prove his allegation by a preponderance of the evidence, but the 'heavier burden' arises from a presumption that counsel is competent. *See Strickland v. Washington,* 466 U.S. 668, 689 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674] (1984); *Seales v. State,* 580 S.W.2d

733, 735 (Mo. banc 1979). In determining the issue of ineffective assistance of counsel, the trial court is free to believe or disbelieve evidence—contradicted or undisputed. *See Jones*, 598 S.W.2d at 597. And, appellate review of the trial court's decision in ruling a Rule 27.26 proceeding is expressly 'limited to a determination of whether the findings, conclusions, and judgment of the trial court are *clearly erroneous.*' (Emphasis added.) *Rule 27.26(j); Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984). Such findings and conclusions are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with the 'definite and firm impression that a mistake has been made.' *Stokes v. State*, 688 S.W.2d 19, 21 (Mo. App.1985).

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland*, 466 U.S. at 687 [104 S.Ct. at 2064]; *Seales*, 580 S.W.2d at 736. A criminal defendant must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. And, a court need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so. *Strickland*, 466 U.S. at 697 [104 S.Ct. at 2069] (emphasis added).

Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.*

■ As to appellant's remaining two points he is faced with the insurmountable obstacle that he presented both points in his direct appeal as trial errors and this Court ruled them against him. And, despite able counsel's efforts in this proceeding, the Court rejects the attempt to convert or transform alleged trial errors in the direct appeal into claims of ineffective assistance of counsel. A *Rule 27.26* motion cannot be used as a vehicle for a second appellate review and issues decided in the direct appeal cannot be relitigated in a post-conviction proceeding. *Armbruster v. State*, 686 S.W.2d 519 (Mo.App.1985). This is true even though the issue is cloaked in a different theory. *Choate v. State*, 659 S.W.2d 354 (Mo.App.1983).

■ On direct appeal appellant's main brief assigned 47 points of error and appellant's *pro se* brief alleged 10 points. The two briefs claimed error in the trial court permitting evidence concerning the Aryan Brotherhood or Aryan Nations Church and also averred error in the trial court's denial of a second psychiatric examination of appellant.

The transcript on direct appeal, and the main and *pro se* briefs of appellant, clearly show and demonstrate that appellant's trial attorney attempted, *albeit* unsuccessfully, to keep out testimony and an exhibit concerning the Aryan Brotherhood or Aryan Nations Church, and this Court refused to find error in the admission of such evidence.

Appellant's complaint concerning a second psychiatric examination was the subject of two points in his *pro se* brief on direct appeal and also ruled adversely to him when the Court's opinion stated:

We have carefully reviewed all the remaining allegations of error made by appellant's counsel and all the remaining allegations set forth in appellant's *pro se* brief and we find them to be vague, duplicative and totally without merit.

*State v. O'Neal*, 718 S.W.2d at 503. In addition, the record, transcript, and briefs in the direct appeal, as well as the transcript and briefs in this appeal, reflect (1) appellant's trial attorney sought and obtained a psychiatric examination, and (2) at appellant's request, asked for a second examination. There was no evidence war-

ranting the initial examination or a second examination.

The Court holds that the issues presented by appellant in this appeal are the identical issues considered and rejected in his direct appeal; further, that complaints directed against rulings of the trial judge in the direct appeal cannot be converted into viable theories of ineffective assistance of counsel in this post-conviction proceeding. The Court further observes that even if his two grounds of alleged ineffective assistance of counsel had not been adjudicated in appellant's direct appeal, appellant wholly failed both the performance and prejudice prongs of *Strickland* and *Sanders*. Even though a movant in a post-conviction proceeding has a "heavy burden" as to a claim of ineffective assistance of counsel, appellant elected not to testify in the evidentiary hearing below.

The motion court's findings and conclusions, as well as the comments of the Honorable Rex A. Henson, presiding judge at appellant's trial, denying further psychiatric examination are incorporated herein and attached as Appendix A and B.[1]

The findings, conclusions and judgment entered by the Honorable A.J. Seier in the post-conviction proceeding are affirmed.

BLACKMAR, WELLIVER, RENDLEN, HIGGINS, COVINGTON, JJ., and FENNER, Special Judge, concur.

ROBERTSON, J., not sitting.

APPENDIX A

In the Circuit Court of Butler County, Missouri

ROBERT EARL O'NEAL, Movant,

v

STATE OF MISSOURI, Respondent.

Case No. CV187–52CC

FINDINGS OF FACT

On the fifteenth day of January, 1988 came the above case for evidentiary hearing at the Missouri State Penitentiary. Movant was present in person and by his counsel, Gary L. Robbins. The state was represented by Assistant Prosecuting Attorney Patricia S. Joyce. The following findings of fact are hereby made:

1) On March 22, 1985, Movant was convicted of capital murder. The jury imposed a sentence of death and Movant was sentenced on May 14, 1985, by the Circuit Court of Butler County, Missouri.

2) On April 16, 1987, Movant filed a motion for relief under Supreme Court Rule 27.26. Movant alleged that he could not assist in the preparation of the case for trial and could not appreciate the seriousness of the death penalty because of mental disease or defect. An amended motion for relief was filed in August, 1987, an addendum to the motion was subsequently filed in September, 1987.

3) Movant maintained that his trial counsel provided ineffective assistance of counsel in that he failed to investigate witnesses who would have testified that one of Movant's codefendants was not at the scene of the murder as alleged by the state's witnesses. Lloyd Schlup, was the other codefendant who was tried separately and convicted of the same offense and sentenced to death in the Circuit Court of St. Charles County.

Lloyd Schlup was identified by Officer John Maylee and Sergeant Roger Flowers as being involved in the homicide. Movant's defense at trial was that he was acting in self defense when he was attacked by the victim. The testimony of the two prison officers reflected that Lloyd Schlup, Rodnie Stewart and Movant attacked the victim without any provocation while they were being let out for their lunch at housing unit 5–A at the Missouri State Penitentiary.

Lloyd Schlup testified at the trial that he was not involved in the homicide. (T pp.

---

1. It is interesting to note that appellant sought to overturn his prior murder conviction (*State v. O'Neal,* 618 S.W.2d 31 (Mo.1981)) by alleging ineffective assistance of counsel for failure to obtain a mental examination. Chief Judge Crow's opinion is instructive on such an issue (*O'Neal v. State,* 724 S.W.2d 302 (Mo.App.1987)).

683–706) The trial counsel did put forth that trial strategy to impeach the believability of the state's witnesses by placing into evidence the testimony of Lloyd Schlup.

O'Neal testified that he was acting alone when he killed Dade in self-defense. The identity of a second coactor would not have assisted in his defense.

4) The Movant alleges that trial counsel was ineffective in failing to discover exculpatory material relevant to Lloyd Schlup's involvement.

Ms. Penny Hoose, a psychologist for the MO Department of Corrections, testified at the evidentiary hearing to a conversation between Warden Bill Armontrout and Lloyd Schlup that occurred in January, 1987. The Warden allegedly told Schlup that he knew Schlup was not involved in the murder. The Warden then identified the person responsible for the murder. Ms. Hoose demeanor, while testifying proved to this Court that she was unworthy of belief and totally lacking in credibility. Her story was incredible and did not communicate that any of the conversations did occur.

Bill Armontrout was called as a witness by the Movant at this proceeding to testify as to this knowledge of Lloyd Schlup's involvement in the murder of Arthur Dade. Warden Armontrout testified and the Court so finds that he had no personal knowledge of the homicide. He testified that he had heard rumors that Lloyd Schlup was not involved. The Court finds that no exculpatory information was found as a result of an investigation into the rumors. The Court finds that Warden Armontrout did not advise Penny Hoose that Lloyd Schlup was not involved in the homicide of Arthur Dade. Mr. Armontrout further testified and the Court finds that he did not discuss with Schlup the identity of the other inmate who supposedly was responsible for acting with O'Neal.

Movant has alleged that exculpatory material was not turned over to his counsel prior to trial. Ms. Hoose testified that Joe Layman stated that a tape was missing from the investigation of the Dade homi-

cide. Layman, a correctional officer, was working in 5–C when the murder occurred. 5–C is in a separate building from where the murder occurred and where the taping of the incident occurred. Judge Thomas J. Brown III, the prosecutor in the case, testified that no missing tapes existed. He further testified that the tape was turned over to the defense attorneys early in the defense.

Lieutenant Peoples testified at trial that he was the only officer working at the base control unit that could have recorded any transactions on the day of the murder. (T. pp 491–495) Lieutenant Peoples further testified that the tape that was played at the Movant's trial was true and accurate and reflected the events in question. No missing tape was proven to exist and the court finds that no missing tape existed.

5) Movant further alleged in his motion that trial counsel failed to interview Randy Jordan. Mr. Woods testified at the hearing that either he or his investigator interviewed every witness that was given to him by the Movant. Movant has failed to show what that testimony would have been or how it would have been relevant. The Court finds that trial counsel was not given the name of Mr. Jordan.

6) Movant further alleged that counsel was ineffective in that he failed to request a continuance because trial counsel was sick. Mr. Woods did request a continuance at the pretrial conference approximately one week before trial which was denied by the trial judge. Mr. Wood testified that he was not sick at trial and may have been sick the week before trial. (T. p. 281) The court finds that the trial counsel was not sick during the trial.

7) Mr. Woods testified and the Court so finds that he did visit the scene of the crime, contrary to the allegation of Movant.

8) Movant has further alleged that counsel was ineffective in failing to put into issue at trial the victim's reputation for violence. The defense asserted by Movant is that the victim attacked him and Movant killed him in self-defense.

Roger Denney testified that the victim had a bad reputation for violence and had threatened to kill him. (T. pp. 627–628)

Jack Morgan testified that the victim had a propensity towards violence. (T. p. 640)

John Sprous and John Kitchell testified that the victim had a reputation for violence. (T. pp. 672, 707–708)

The records does show that Mr. Woods placed into evidence the reputation for violence of the deceased on four occasions to the jury.

9) Movant complains further that his trial counsel was ineffective in failing to place into evidence good deeds that Movant performed while in prison. Tom McMurran testified that he was helped by Robert O'Neal while he was in the penitentiary. (T. pp 787–789) Warden Armontrout testified at the evidentiary hearing that he was not acquainted with any good acts that Movant performed. He testified in the trial that O'Neal had a reputation as an assaultive and aggressive inmate. (T. p. 727) Trial counsel did place into evidence the limited good deeds that Movant performed while in prison. Movant does not assert what the prison records are and what they would have specifically shown.

10) Movant maintains that he was denied effective assistance of counsel when Movant was denied the right to recall Donald Trendley as a surrebutal witness. Donald Trendley was called as a defense witness (T. pp. 564–589) A rebuttal witness was called to testify that Trendley's testimony was contrary to his testimony at the deposition. Trendley was cross-examined as to the variance between his deposition and trial testimony. Counsel requested a continuance to secure the attendance of Trendley, which was denied by the Court. (T p. 740)

11) Movant maintains that he was denied effective assistance of counsel in that his trial attorney failed to fully develop the inconsistencies in Officer Maylee's testimony. Maylee was cross-examined concerning his distance from the scene, his vision problems, identification of O'Neal by his clothing and physical appearance, inconsistencies between his inter office communica-

tion written on the day of the murder and his trial testimony, and identification and description of the murder weapon. Mr. Woods questioned Maylee concerning his failure to observe Officer Flowers in breaking up the fight as well as a differing description of the grip on the victim. Maylee was also examined as to inconsistencies between his testimony and that of Officer Flower. The Court finds that Mr. Woods extensively cross-examined Officer Mayloee and covered all possible areas of examination.

12) Movant maintains that he was denied the effective assistance of counsel when his counsel should have known that Movant was involved in the Aryan Nations Church of Jesus Christ Christian rather than being involved with the Aryan Brotherhood. Movant stated at the hearing that he was not a member of either organization contrary to the allegation of the 27.26 petition.

On direct appeal the Supreme Court upheld the admission of the Movant's affiliation with the Aryan Nations as a proper basis to provide motive for the murder of Dade. The Court also ruled that the impeachment of the witnesses testimony with regard to affiliation was proper as to show bias. *State v. O'Neal* 718 S.W.2d 498 (Mo. banc 1980)

At the hearing Mr. Woods testified and the Court finds that he did not receive any direction from Movant to call Robert Miles or Robert Butler as witnesses prior to trial. At the trial Woods moved for a continuance to secure the testimony of Robert Butler (T. p. 717)

The Movant had requested that inmate Driscoll testify as to a prior statement of codefendant Stewart. (Pretrial T. p. 32) No mention was made that Driscoll would testify concerning the Aryan Brotherhood or Aryan Nations of Jesus Christ Christian.

Movant further submitted evidence as to his request that Butler, Miles and Driscoll be subpoenaed as to the composition and beliefs of the Aryan Brotherhood and Aryan Nations of Jesus Christ Christian in a letter marked as exhibit 5. Movant does not mention any of the witnesses. Movant

requested that a motion in limine be filed to limit any references to the Aryan Nations or Teutonic Warriors. The motion was filed by defense counsel and overruled by the Court. (T. p. 2) Additionally, trial counsel objected to the questioning of each defense witness as to his affiliation with those organizations. Mr. Woods did everything requested by his client to limit the introduction of testimony concerning the Aryan Brotherhood or Aryan Nations of Jesus Christ Christian.

Warden Armontrout testified and the Court finds that the Aryan Brotherhood and Aryan Nations of Jesus Christ Christian are prison groups whose names are used interchangeably. Both are violent and racist organizations that are not formally recognized within the prison. Identification of members is by tattoos and associations. The Court finds that Robert O'Neal is identified as being a member of the organizations. The Warden testified that there were only two inmates recognized as true members by the California Aryan Brotherhood prison gang.

At the evidentiary hearing Robert Driscoll testified that he was a member of the Aryan Brotherhood. He further testified that O'Neal was not such a member. Driscoll testified that the Aryan Nations Church is not a violent group. The Court finds that Driscoll is unworthy of belief and rejects his testimony in whole.

Movant has failed to prove the substance of the testimony of Butler or Miles or what relevance it would have been to the case. Movant has failed to prove that their testimony would have made any difference in the outcome of the case.

Trial counsel did not know of the identity of Miles, Butler or Driscoll as to expertise on the Aryan Brotherhood or Aryan Nations Church. Counsel could not have known that Movant was not a member of the Aryan Nations or Aryan Brotherhood when Movant's affiliation with those organizations shifts on a monthly basis as demonstrated by his change from the amended 27.26 petition.

13) Movant maintains that his trial counsel and Terry Brummer failed to take diligent steps to see that petitioner received a second psychiatric evaluation. Movant was examined by Dr. L.W. Lucas pursuant to an evaluation paid by the Public Defender's Office. At the pretrial conference Mr. Woods moved for a second psychiatric examination. The Court rejected the motion based on the psychiatric report and the demeanor that the Movant exhibited throughout the proceedings. Mr. Woods renewed the motion on trial date. (T. pp. 10–11)

Mr. Woods testified at this hearing that he did not believe that Mr. O'Neal needed a second psychiatric examination. Trial counsel testified and the Court finds that Movant was able to assist his counsel in the preparation of the case.

The psychiatric report stated, "There is no clear evidence that Mr. O'Neal was psychotic at the time of his participation in the murder of Mr. Dade. There is also no clear evidence that he is psychotic at the present time. I believe that Mr. O'Neal was basically free of psychotic illness at the time the murder occurred. In my opinion, he understood fully the nature and potential consequences of his actions. I see no evidence from the material provided to me that Mr. O'Neal suffered from an overwhelming impulse at the time of the murder, though sociopathy clearly involves a disorder of impulse control. I, therefore, believe that Mr. O'Neal was responsible under the law for his criminal conduct."

This Court had the opportunity to observe Mr. O'Neal during the course of the trial proceedings. He was alert and attentive and assisted his attorney during the proceeding.

Judge Thomas J. Brown III, the prosecutor for the murder trial, testified at the proceeding that he had been acquainted with O'Neal for several years. Mr. O'Neal was above-average in intelligence and always able to assist his attorney in the cases, according to Judge Brown.

Movant filed a pro se brief with the Supreme Court alleging that the trial court erred in failing to order a second psychiatric examination. The Court on appeal held

that "We have carefully reviewed all the remaining allegations of error made by appellant's counsel and all the remaining allegations set forth in appellant's pro se brief and we find them to be vague, duplicative and totally without merit." O'Neal supra p. 503

Movant's exhibit number 5 is a letter written by Movant to trial counsel on December 21, 1984. Movant addresses a variety of strategy issues which were employed by counsel at trial. He requests a wide variety of motions in which many were subsequently filed by defense counsel. Movant was able to assist counsel.

The psychiatric condition of Movant was not an issue at trial in phase one. The Movant testified that he was acting in self-defense when the homicide occurred. Movant stated that he was attacked by the victim and that he disarmed the victim. He stabbed the victim in self-defense. Movant testified to a clear sequence of events in which he knew what actions occurred. Pursuant to the testimony of Movant, he was not acting under the influence of a mental disease or defect.

Mitigating evidence concerning the Movant's background was presented through the testimony of his mother, father, grandmother, and aunt. Testimony concerning a deprived background and drug usage was entered in the second phase.

14) Movant presented no evidence at the hearing concerning his inability to assist in preparation for trial.

15) Movant presented no evidence that he did not appreciate the seriousness of the charge and the fact that he was sentenced to death.

## CONCLUSIONS OF LAW

1) Movant bears the burden of proof and that burden is by a preponderance of the evidence. *White v. State* (Mo.App.1976) 540 S.W.2d 148 and *Lamphear v. State* (Mo.App.1978) 540 S.W.2d 40, S.Ct. Rule 27.26(b)(3).

2) Movant has failed to prove what the testimony of Van Robertson, Lamont Griffin, Ricky McCoy or Randy Jordan would

have been if presented at trial. No showing has been made that any of the witnesses would have provided a viable defense to Movant. Lloyd Schlup did testify at the Movant's trial. The issue was presented at trial and any additional evidence would have been cumulative. *Hogshooter v. State*, 681 S.W.2d 20, (Mo.App.1984) and *Leigh v. State*, 673 S.W.2d 788 (Mo.App. 1984) Movant has failed to show that any different result would have occurred if the testimony of the witnesses had been presented. *Rainwater v. State* 676 S.W.2d 310 (Mo.App.1984).

Trial counsel testified that he interviewed all of the witnesses that he was given before the trial. He did not receive the names of those witnesses other than Lloyd Schlup. "In preparations of a case a lawyer is not required to be a clairvoyant, and he must of necessity rely on information furnished him by his client". *Johnson v. State* 479 S.W.2d 416, 420 (Mo.1972) and *McCoy v. State* 574 S.W.2d 11, 12 (Mo.App. 1978) Mr. Woods could not interview witnesses who were not identified. The Court finds Movant's claim without merit.

3) No exculpatory evidence was proven to exist which would have assisted trial counsel in the defense case. The Movant failed to prove the existence of any missing tape. Movant has failed to prove that Warden Armontrout had any knowledge that Lloyd Schlup, codefendant of Movant, was not involved in the homicide. Counsel cannot be ineffective when there is no evidence to discover. *White v. State* (Mo. App.1976) 540 S.W.2d 148 The Court finds Movant's claims without merit.

4) Movant has failed to show that counsel was sick during the trial and what, if any, effect it had on trial performance. *White v. State* (Mo.App.1976) 540 S.W.2d 148. The Court finds Movant's claim without merit.

5) Movant has failed to prove that counsel did not visit crime scene and what effect it would have had on the outcome of the trial. The Court finds Movant's claims without merit.

6) The record in this case reflects that the victim's reputation for violence was

placed into evidence through the testimony of four witnesses. (T pp. 627, 628, 640, 672, 707, and 708) The Court finds Movant's claims without merit. Movant has failed to show that evidence of prior mental instability of victim, if it existed, would be any basis for admissibility into evidence.

7) Movant's good deed in prison was placed into evidence at the second phase of the proceeding. (T pp. 787–789) Court finds Movant's claim without merit and refuted by the record. *Litton v. State* 712 S.W.2d 55 (Mo.App.1986)

8) Mr. Woods did request a continuance to secure the attendance of Trendley in surrebutal. That motion was overruled by the Court. (T p. 740) The Supreme Court held that the request for Trendley's testimony was vague, duplicative and totally without merit. *O'Neal* supra The Court finds that this claim is totally without merit.

9) Movant has alleged that counsel was ineffective in failing to cross examine witness Maylee with conflicting statement. Maylee was examined and impeached with several of his prior statements. Any failure to examine with regard to all of his statements would be a matter of trial strategy *Atkins v. State* 652 S.W.2d 234 (Mo. App.1983) Given the extensive cross examination of witness Maylee, the Movant's claim to ineffective assistance of counsel is without merit.

10) Movant has failed to prove that counsel should have taken any different action to combat the testimony concerning the Aryan Brotherhood or the Aryan Nations of Jesus Christ Christian. The evidence of membership was held to be properly admissable as decided on direct appeal. *O'Neal* supra The Court further ruled that the trial court did not commit error by failing to grant a continuance to obtain the testimony of Reverend Butler when it overruled Movant's pro se brief. These issues were decided on direct appeal and cannot be raised in this proceeding. *Nicholose [Nicolosi] v. State* 632 S.W.2d 260 (Mo. App 1981) Movant has failed to prove how the testimony of those witnesses would have been different from evidence presented at trial. Such testimony would have been cumulative. *State v. Rainwater,* supra The Court finds that the claim is totally without merit.

11) Movant maintains that his trial counsel and Terry Brummer failed to diligently obtain a second psychiatric examination. The Movant raised in his pro se brief the denial of the second psychiatric examination of the Court. On direct appeal the Court held that the issue concerning the second psychiatric examination was vague, duplicative and totally without merit. *State v. O'Neal,* supra Movant's first psychiatric examination was conducted and found that Movant was not acting under a mental disease or defect at the time of the crime. The examination further found that Movant was capable of assisting his counsel. The critical defense issue was whether Movant was acting in lawful self-defense. A mental examination would not have assisted in the first phase of the trial. In the second phase evidence was presented as to mitigation of the death penalty in that Movant was raised in an unstable home and had abused drugs. The Court finds that this issue is totally without merit.

12) Movant maintains that he was unable to assist his attorney in preparation for trial. No evidence was presented that he was unable to assist counsel. *White v. State,* supra The Court finds that this claim is totally without merit.

13) Movant maintains that he did not appreciate the seriousness of the death penalty and that his counsel was ineffective. Absolutely no evidence was presented on this issue. *Shaw v. State* 686 S.W.2d [513] at 516 (Mo.App.1985) The Court finds that this claim is totally without merit.

## ORDER

Relief is hereby denied; the Motion is overruled.

A.J. Seier

A.J. Seier

Circuit Judge

## Certificate of True Copy

STATE OF MISSOURI,
County of......Butler...................... }ss.

I, ..........Wanda.Ellsworth.........................., Clerk
of the Circuit Court in and for said County, hereby certify the above and foregoing to be a true copy of original.....................
..........Finding.of.Fact.......................................................................... as the same appears
of record in my office.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court at office in

Poplar.Bluff,.MO........this the.....15th........day of.........April..............., 19.88..

....................Wanda.Ellsworth..........................

**Clerk Circuit Court**

By................................................. D. C.

---

### APPENDIX B

[Judge Henson]: All right. You have brought this up numerous times, Mr. Woods, about mental exams and more mental exams. I have had this defendant in court two or three times before you got into it for extended periods of time, at which times he was permitted to make motions and address the court. Since you have got into the case I have had an opportunity to have the defendant in court on motions and this matter of a pretrial mental has come up, but I have never, as I recall, had former counsel or you indicate to the court that you were having any trouble with the defendant in preparing his defense or indicating to me that personally you felt that he needed a pretrial mental. Are you telling me now in your opinion he does need one or are you telling me what your client wants?

MR. WOODS: Your Honor, I'm telling you what my client wants.