**Robert Earl O'NEAL, II, Appellant,**

v.

**Paul DELO, Appellee.**

No. 93–1193.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1993.

Decided Jan. 6, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 9, 1995.

---

Michael J. Gorla, Clayton, MO, argued for appellant (Timothy K. Kellett, on brief).

Ronald L. Jurgeson, Asst. Atty. Gen., Kansas City, MO, argued for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HENDREN,* District Judge.

---

* The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas, sitting by designation.

BOWMAN, Circuit Judge.

Robert Earl O'Neal, II, appeals from the order of the District Court denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus.[1] We affirm.

## I.

On May 14, 1985, a Missouri jury found O'Neal, who is white, guilty of capital murder in the stabbing death of fellow Missouri State Penitentiary inmate Arthur Dade, a black.[2] The state's evidence suggested a racial motive for the murder of Dade. The jury imposed the death penalty. O'Neal's conviction and sentence were affirmed on direct appeal. His Missouri Rule of Criminal Procedure 27.26 (repealed 1988) motion for post-convic-

tion relief was denied, and the denial of such relief was upheld on appeal. *O'Neal v. State,* 766 S.W.2d 91 (Mo.) (en banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989).

In October 1989, O'Neal filed a petition in District Court for a writ of habeas corpus. He also requested, and was granted, a stay of execution. The habeas petition, as amended in February 1990, raises twenty-nine grounds for relief. The District Court, adopting the report and recommendation of the Magistrate Judge to whom the matter had been referred, concluded that, with respect to nineteen of these grounds, O'Neal had exhausted his state remedies,[3] but that

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

2. A full statement of the facts of the case can be found in *State v. O'Neal,* 718 S.W.2d 498, 500 (Mo.1986) (en banc), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

3. Claims exhausted, and the alleged constitutional violations, included the following: (A) that the grand jury was not drawn from a pool representing a fair cross-section of the community (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (B) that some members of the petit jury were not drawn from a pool representing a fair cross-section of the community (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (C) that O'Neal was denied effective assistance of counsel in that his counsel failed to obtain necessary psychiatric tests and examinations (violating the Fifth, Sixth, and Fourteenth Amendments); (D) that the trial court denied motions for a psychiatric examination although O'Neal had noted his intent to rely on an insanity defense (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (E) that the court similarly denied O'Neal's second motion for a psychiatric examination although this was a crucial issue in the sentencing phase (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (J) that a prejudicial photograph was erroneously admitted into evidence during the sentencing phase (violating the Fifth, Eighth, and Fourteenth Amendments); (K) that the Missouri statutory scheme allows the prosecuting attorney to exercise unbridled discretion as to who is to be subjected to the death penalty (violating the Fifth, Eighth, and Fourteenth Amendments); (L) that O'Neal was forced to stand trial bound and shackled (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (M) that

defense witnesses were compelled to testify attired in prison garb, bound, and shackled (violating the Fifth, Sixth, and Fourteenth Amendments); (N) that a potential juror was improperly excluded (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (P) that the court allowed the prosecution to elicit testimony about the alleged membership of O'Neal and his witnesses in the Aryan Brotherhood and/or the Aryan Nations Church of Jesus Christ Christian (violating the Fifth, Sixth, and Fourteenth Amendments); (Q) that O'Neal was denied effective assistance of counsel when his attorney failed to investigate and determine the differences between the Aryan Brotherhood and the Aryan Nations Church of Christ Christian (violating the Fifth, Sixth, and Fourteenth Amendments); (T) that the court allowed the prosecution to prevent the testimony of Earl Bays and Ivan Johnson during the penalty phase of the trial (violating the Fifth, Eighth, and Fourteenth Amendments); (U) that the court sustained prosecution challenges for cause to veniremen expressing opposition to the death penalty, depriving O'Neal of his right to a fair and impartial jury representative of the community (violating the Fifth, Sixth, and Fourteenth Amendments); (V) that the court's refusal to allow separate juries for the guilt and penalty phases of the trial deprived O'Neal of his right to a fair trial (violating the Fifth, Sixth, and Fourteenth Amendments); (W) that the death penalty was disproportionately severe in light of the circumstances of the offense and the mitigating evidence (violating the Fifth, Eighth, and Fourteenth Amendments); (X) that the court denied application for a writ of habeas corpus ad testificandum for a New Mexico inmate who was a necessary and material defense witness at the penalty phase (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (Y) that O'Neal was deprived of his rights of confrontation, participation in his defense, due process, and equal protection by his exclusion from a hearing on his

he had not yet presented the other ten grounds to the state courts. Since it appeared that perhaps these unexhausted grounds still could be raised in a state habeas action under Missouri Rule of Civil Procedure 91,[4] the federal habeas action was ordered to be held in abeyance if O'Neal sought to exhaust his state remedies by seeking habeas relief under Rule 91.

O'Neal thereafter filed a Rule 91 petition in the Circuit Court of Washington County, Missouri. The petition was transferred to the Missouri Supreme Court and subsequently denied on procedural grounds. O'Neal then filed a motion to recall the mandate, which the Missouri Supreme Court also denied.

After the state court denied O'Neal's motion to recall the mandate, the parties filed additional briefs in the District Court. The Magistrate Judge recommended that O'Neal's habeas petition be denied, concluding that the claims that O'Neal belatedly had attempted to raise in the state courts by means of his Rule 91 petition were procedurally defaulted as a matter of state law and that O'Neal had failed to show cause and

prejudice to excuse the resulting procedural bar against litigating the merits of these claims in a federal habeas proceeding.[5] Turning to the nineteen grounds found to have been exhausted in the state courts, the Magistrate Judge considered and rejected each on the merits. He therefore recommended that O'Neal's habeas petition be denied. A *de novo* review by the District Court resulted in an order adopting the Magistrate Judge's recommendation and denying O'Neal's petition.

O'Neal filed a motion under Federal Rule of Civil Procedure 59(e) to alter, amend, or set aside the District Court's judgment. This was denied. O'Neal then filed a timely notice of appeal and application for a certificate of probable cause. The District Court granted the certificate and continued the stay of execution.

O'Neal's appeal from the District Court's denial of habeas relief is now before us. In it he raises eight claims of error, contending that the District Court should have granted habeas relief for any or all of the following reasons: (1) he was deprived of effective assistance of counsel at trial by counsel's

motion to quash the special venire (violating the Fifth, Sixth, and Fourteenth Amendments); and (Z) that the facts proved in the guilt phase and the aggravating circumstances presented at the penalty phase were less egregious than in capital murder cases where defendants had received life sentences, depriving O'Neal of equal protection under the law and his right to be free of cruel and unusual punishment (violating the Fifth, Sixth, and Fourteenth Amendments).

4. The unexhausted claims were: (F) that the trial court gave an incorrect instruction on the lesser-included offense of second degree murder (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); (G) that O'Neal was denied effective assistance of counsel because his counsel failed to object to the instruction given on second degree murder and did not submit a correctly worded instruction on that offense (violating the Fifth, Sixth, and Fourteenth Amendments); (H) that the court incorrectly instructed the jury during the sentencing phase that it had to be unanimous in finding the existence of a mitigating circumstance (violating the Fifth, Eighth, and Fourteenth Amendments); (I) that his counsel was ineffective in failing to object to the instruction given on mitigating circumstances (violating the Fifth, Sixth, and Fourteenth Amendments); (O) that his counsel was ineffective in eliciting the information that two veniremen would not

consider returning the death penalty under any circumstances (violating the Fifth, Sixth, and Fourteenth Amendments); (R) that the prosecution's closing argument during the sentencing phase deprived O'Neal of a fair trial (violating the Fifth, Sixth, and Fourteenth Amendments); (S) that O'Neal's counsel was ineffective in failing to object to parts of the prosecutor's closing argument during the sentencing phase of trial (violating the Fifth, Sixth, and Fourteenth Amendments); (AA) that the prosecutor failed to disclose exculpatory evidence (violating the Fifth, Eighth, and Fourteenth Amendments); (BB) that the petit jury was not drawn from a pool representing a fair cross-section of the community due to the absence of black jurors (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments); and (CC) that the cumulative effect of *all* the alleged errors deprived O'Neal of his due process rights to a fair trial and of his right to be free of cruel and unusual punishment (violating the Fifth, Sixth, Eighth, and Fourteenth Amendments).

5. An additional ground for habeas relief (DD) was stated in O'Neal's amended petition of April 10, 1992. O'Neal alleged that the trial court's refusal to allow him to address the jury during the penalty phase of the trial was unconstitutional. This claim was found by the magistrate judge to be procedurally barred. *See infra* part VI.

failure to obtain the necessary psychiatric examination and tests; (2) he was deprived of his constitutional rights when the trial court permitted testimony regarding the alleged membership of petitioner and his witnesses in a racist prison organization; (3) the grand jury that indicted him was not drawn from a fair cross-section of the community; (4) the petit jury which convicted and sentenced him was drawn from a similarly unfair cross-section of the community; (5) the state court's incorrect jury instruction on second degree murder prevented the jury from considering whether O'Neal was guilty of the lesser-included offense rather than capital murder; (6) he was deprived of his right to a fair trial on the issue of punishment by the prosecutor's improper closing argument; (7) he was deprived of his constitutional rights by the court's incorrect jury instruction on mitigating circumstances during the sentencing phase of the trial; and (8) the state trial court deprived O'Neal of his constitutional right of allocution. Each of these claims will be considered in turn. We review the District Court's conclusions of law *de novo,* and will accord state court findings of fact the 28 U.S.C. § 2254(d) presumption of correctness.

## II.

■ O'Neal first contends that the District Court erred in denying his claim of ineffective assistance of trial counsel based on counsel's failure to obtain the necessary psychiatric examination and tests. This formed the basis for claim (C) of O'Neal's habeas petition, which was denied on the merits by the District Court after *de novo* review of the Magistrate Judge's recommendation. Applying the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Magistrate Judge concluded that "petitioner has failed to overcome the strong presumption that his trial counsel rendered effective assistance and that counsel's performance met at least an objective standard of reasonableness in investigating and preparing petitioner's defense." *O'Neal v. Delo,* No. 89–1893C(6), Report and Recommendation of United States Magistrate Judge at 20 (E.D.Mo. Sept. 28, 1992) (Report and Recommendation).

*Strickland* mandates a two-part inquiry, with O'Neal first being required to show "that his counsel's assistance fell below an objective standard of reasonableness, considering all of the circumstances faced by the attorney at the time in question." *Sanders v. Trickey,* 875 F.2d 205, 207 (8th Cir.), *cert. denied,* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 201 (1989); *see also Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Prior to trial, counsel arranged for O'Neal's examination by Dr. Lucas, a psychiatrist. In his report, Dr. Lucas concluded that O'Neal "was basically free of psychotic illness at the time the murder occurred." L.W. Lucas, M.D., Initial Psychiatric Evaluation of Robert Earl O'Neal, Jr., at 5 (March 9, 1985). O'Neal appeared to understand the nature of the charges against him and the consequences of conviction and seemed capable of assisting counsel in his own defense. *Id.* at 6. Dr. Lucas also found that O'Neal was responsible for his conduct at the time of the murder. *Id.* at 5. The doctor believed O'Neal was competent to stand trial and suggested further tests only to rule out "the remote possibility of a progressive organic brain disease" and to confirm the competency evaluation. *Id.* at 6. Dr. Lucas, in a cover letter to his report, stated, "I feel that these tests are important to do to rule out the possibility of a specific, treatable brain disease, but frankly doubt that they will show anything positive and am suggesting them for the sake of thoroughness and because of the gravity of Mr. O'Neal's legal situation." Letter from L.W. Lucas, M.D., to David E. Woods (March 11, 1985).

Based on Dr. Lucas's report and at O'Neal's request, counsel moved at the pretrial conference for a second psychiatric examination. The trial court rejected the motion, grounding its ruling on Dr. Lucas's report and O'Neal's demeanor. Counsel renewed the motion on the day trial began. Trial Tr. at 10–12. The motion, however, was not granted and no further psychiatric examination was performed.

At the Rule 27.26 hearing, O'Neal's trial counsel testified that O'Neal was fully able to assist him in the preparation of the case and that in his judgment a second psychiatric

examination was unnecessary. The prosecutor also testified at the Rule 27.26 hearing, stating that he had been acquainted with O'Neal for several years, that O'Neal was above-average in intelligence, and that at all times he appeared competent to stand trial.

In rejecting O'Neal's claim of ineffective assistance, the Rule 27.26 court, among other things, made the following findings:

The psychiatric condition of Movant was not an issue at trial in phase one. The Movant testified that he was acting in self-defense when the homicide occurred. Movant stated that he was attacked by the victim and that he disarmed the victim. He stabbed the victim in self-defense. Movant testified to a clear sequence of events in which he knew what actions occurred. Pursuant to the testimony of Movant, he was not acting under the influence of a mental disease or defect.

Mitigating evidence concerning the Movant's background was presented through the testimony of his mother, father, grandmother, and aunt. Testimony concerning a deprived background and drug usage was entered in the second phase.

*O'Neal v. State*, No. CV187–52CC, Findings of Fact *reprinted in and incorporated by O'Neal v. State*, 766 S.W.2d at 97 (App. A.). The Rule 27.26 court also found that O'Neal had presented no evidence to show that he was unable to assist in preparation for trial or to show that he did not appreciate both the seriousness of the charge and the fact that he was sentenced to death. *Id.* These historical factual findings are fairly supported by the record and are entitled to the 28 U.S.C. § 2254(d) presumption of correctness. *See Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981).

O'Neal argues that his trial counsel's failure to do whatever was necessary to secure an additional psychiatric examination and further tests rises to a level of deficiency sufficient to satisfy the first part of the

*Strickland* standard. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. We disagree. The objective reasonableness of counsel's investigation of O'Neal's mental state must be evaluated in light of the circumstances of this particular case, with a heavy measure of deference given to counsel's professional judgments. *See id.* at 690–91, 104 S.Ct. at 2066. Here, counsel obtained a psychiatric examination close to the time of trial and the examining physician strongly vouched for O'Neal's sanity and competency. The trial court denied counsel's motion for a second evaluation. Counsel's decision not to investigate O'Neal's mental state further was influenced, and properly so, by counsel's observation of O'Neal's actions and demeanor. *See Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066 (noting that counsel's choices regarding trial strategy often are based "on information supplied by the defendant"). There is no evidence in the record that O'Neal exhibited any behavior or other indicia of an abnormal mental state such that counsel could not reasonably decide to proceed without further psychiatric testing; counsel testified that he believed additional testing was unnecessary. Post–Conviction Hearing Tr. at 140–41. O'Neal has not met the burden of showing that his counsel's decision not to pursue a second psychiatric examination and tests was professionally unreasonable so as to render counsel constitutionally ineffective. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *see also Jones v. Murray*, 947 F.2d 1106, 1111–13 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1591, 118 L.Ed.2d 308 (1992) (holding that counsel's decision not to pursue additional psychological testing was within reasonable professional judgment, after initial tests revealed no mitigating psychiatric conditions). We therefore agree with the District Court that this claim of ineffective assistance of trial counsel must fail.[6]

### III.

O'Neal's second contention is that the District Court erred in denying habeas relief

---

6. Our resolution of the deficient-performance issue makes it unnecessary for us to reach the prejudice aspect of the *Strickland* inquiry. For the sake of completeness, however, we note that based on our review of the record it is clear that O'Neal also has failed to show that he was prejudiced at either the guilt phase or the sentencing phase of his trial by counsel's failure to obtain an additional psychiatric examination and tests.

on his claim that the trial court violated various of his constitutional rights by allowing the prosecution to elicit testimony concerning the alleged membership of O'Neal and his witnesses in a racist prison organization, the Aryan Brotherhood and/or the Aryan Nations Church of Jesus Christ Christians. This was the basis for claim (P) of O'Neal's amended petition for habeas relief and was addressed on direct appeal in *State v. O'Neal,* 718 S.W.2d 498, 503 (Mo.1986) (en banc), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987). The Magistrate Judge made a ruling on the merits and concluded that this ground afforded O'Neal no basis for habeas relief. This recommendation was adopted after *de novo* review by the District Court.

O'Neal cites *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), in support of his argument. In *Dawson,* the Supreme Court held that, because membership in organizations is protected under the First Amendment, the fact of membership in a white racist organization cannot be raised as evidence of bad character in the penalty phase of a capital proceeding where that evidence is not relevant to the rebuttal of any specific mitigating evidence. *Id.* at ——— ———, 112 S.Ct. at 1098–99.

We decline to reach the question of whether *Dawson* is a new rule whose application is barred by the retroactivity rule of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because the facts of the case at bar are easily distinguished from *Dawson.*

In *Dawson,* both the murder victim and the defendant were white; consequently, the defendant's membership in a white racist organization, the Aryan Brotherhood, was not relevant to any possible motive for the murder. Aryan Brotherhood evidence, offered solely as evidence of the defendant's bad character, went to the defendant's abstract beliefs rather than to rebuttal of specific mitigating factors presented at sentencing. The evidence of defendant's membership in the Aryan Brotherhood thus was not relevant to the question of whether the defendant should receive the death penalty, and therefore the admission of this evidence vio-lated the First and Fourteenth Amendments of the United States Constitution. *Dawson,* 503 U.S. at ——, 112 S.Ct. at 1099.

In the case at hand, O'Neal is white and Dade, the victim, was black. The question of racial animus as a motive for Dade's murder was an issue in the trial and O'Neal's membership in the Aryan Brotherhood was thus relevant. *See State v. O'Neal,* 718 S.W.2d at 503. Several of the witnesses called to testify on O'Neal's behalf also were alleged members of the Aryan Brotherhood or the Aryan Nations Church of Jesus Christ Christian, which "might tend to demonstrate bias towards appellant and reflect upon the truth of the evidence elicited from them that the killing was committed in self-defense." *Id.; see also United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Unlike the situation in *Dawson,* testimony regarding the association of O'Neal and his witnesses with these organizations was probative with respect to both his motive and the credibility of his witnesses. We conclude that, contrary to O'Neal's contention, the admission of this evidence did not deny O'Neal a constitutionally fair trial or violate any of his First, Fifth, Eighth, or Fourteenth Amendment rights.

IV.

O'Neal's third contention is that the District Court erred in failing to grant habeas relief on the ground that the grand jury that indicted O'Neal was unconstitutionally selected because it was not drawn from a fair cross-section of the community. This was the basis for claim (A) of O'Neal's amended petition for habeas relief. The Magistrate Judge suggested that it should be denied, a recommendation adopted by the District Court after *de novo* review. As the Magistrate Judge noted, "The burden of proving intentional and purposeful discrimination is on the petitioner. In the instant case, no discrimination whatsoever has been shown in compiling the grand jury list." *O'Neal v. Delo,* No. 89–1893C(b), Report and Recommendation at 16 (citation omitted). We find no reason to disagree with the District Court's denial of habeas relief on this ground.

Jury selection processes, in order to conform to constitutional requirements, must draw prospective jurors from a fair cross-section of the community. *United States v. Brickey,* 426 F.2d 680, 683 (8th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970). In *Brickey,* this Court made clear that a fair cross-section means that "there must not be any systematic, intentional or negligent exclusion of persons or groups" from the grand jury list. *Id.* No single selection system is mandated by *Brickey.* In fact, "[m]any methods of jury selection have been used and approved by the courts where no intentional or systematic discrimination has been proved, and the burden of proving intentional and purposeful discrimination rests on the [petitioner]." *Id.* The burden of proving that the jury list was compiled in a discriminatory manner thus lies with O'Neal.

The record clearly establishes that O'Neal has failed to prove purposeful discrimination in the selection of his grand jury. He has made no showing that the sheriff's use of maps, phone books, and personal references to construct the jury list constituted discrimination of any kind. Further, O'Neal did not demonstrate that the grand jury, consisting of seven men and five women, ten whites and two blacks, excluded any distinctive group to which he belonged or failed to draw from the townships of Butler County in proportion to their size, as then required by state law. *See* Mo.Rev.Stat. § 540.020(1) (1986) (repealed 1989). We find that O'Neal has failed to demonstrate any equal protection or due process violation in the grand jury selection procedure. Accordingly, we affirm the District Court's denial of habeas relief on this claim.

## V.

O'Neal's fourth contention is that the District Court erred in determining that the venire pool from which the petit jury was selected was drawn from a fair cross-section of the community. This was ground (B) of his amended petition for habeas relief and was rejected by the Magistrate Judge; who noted that O'Neal was "unable to demonstrate any error of constitutional magnitude" or to show "a reasonable probability that, but for the purported trial error, the outcome of the proceedings would have been different." *O'Neal v. Delo,* No. 89–1893C(6), Report and Recommendation at 17. This recommendation was adopted by the District Court after *de novo* review.

O'Neal's case was tried on a change of venue from Cole County (the location of the penitentiary in which the murder occurred) to Butler County. Pursuant to Missouri Revised Statutes § 494.250 (1986) (repealed 1989), the Butler County sheriff was instructed by the court to select additional venirepersons, *i.e.,* "bystander jurors" or "talespersons," to increase the size of the pool from which O'Neal's jury would be chosen. O'Neal claims that in addition to talespersons selected at random from a coroner's inquest list, some of the special venirepersons called by the sheriff's office were acquainted with the sheriff or with the sheriff's staff.[7]

Where the sheriff and his staff do not participate in the murder investigation or prosecution in any way, their acquaintance with some venirepersons does not invalidate the selection process. *See State v. Sloan,* 666 S.W.2d 787, 791 (Mo.Ct.App.1984) (concluding that where sheriff and staff were not involved in investigation and arrest of defendant, and crime occurred in another county, the mere fact that sheriff and deputies were acquainted with talesperson jurors did not render sheriff and deputy ineligible to participate in the selection process). Nor does the sheriff's mere acquaintance with several of the special venirepersons invalidate O'Neal's conviction. *See Henson v. Wyrick,* 634 F.2d 1080, 1084 (8th Cir.1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981).

In *Russell v. Wyrick,* another decision addressing the Butler County process for se-

---

7. One special venireperson was the office manager's father, another was a deputy's neighbor, and another a deputy's cousin. None of the three served on the jury that convicted O'Neal. Of the additional venirepersons called by the Butler County sheriff's office, only one served on the jury. A second was an alternate but did not participate in deliberations. Neither was acquainted with any of the sheriff's office staff.

lecting talespersons, we found that it did not violate the petitioner's due process rights to have the sheriff or the sheriff's office staff select bystander jurors for a case in which the sheriff's office was not involved in the investigation or prosecution of the crime and in which not all venirepersons were acquaintances of the sheriff. *Russell v. Wyrick,* 736 F.2d 462, 464 (8th Cir.1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985). Thus, neither the participation of the sheriff's staff in selecting special additional venirepersons nor the staff's acquaintance with some of the venirepersons constituted constitutional error in the instant case.

In addition, we agree with the Magistrate Judge that O'Neal did not "demonstrate a reasonable probability that, but for the purported trial error, the outcome of the proceedings would have been different." *O'Neal v. Delo,* No. 89–1893C(6), Report and Recommendation at 17. Only one juror called by the sheriff served on the jury. The juror was not acquainted with the sheriff or his staff and stated during voir dire that he could be fair and impartial. O'Neal has not argued or demonstrated that the jury was biased or otherwise unfair in any manner. We therefore affirm the District Court's denial of habeas relief on O'Neal's claim that the state failed to provide trial by a fair and impartial jury selected from a fair cross-section of the community.

## VI.

■ Petitioner's fifth, sixth, seventh, and eighth contentions assert claims ((F), (R), (H), and (DD), respectively) that were raised for the first time in the state courts in O'Neal's Rule 91 state habeas action and denied by the Missouri Supreme Court as being procedurally defaulted. O'Neal then filed a motion in that court asking the court to recall its mandate. In his motion, O'Neal recast these claims in terms of ineffective assistance of counsel, alleging that his counsel on direct appeal had been deficient in failing to raise these claims of trial error. This motion was overruled by the Missouri Supreme Court, which held that all of these claims had "been finally determined or are now procedurally barred, and said motion

discloses no other ground that is not procedurally barred." *Missouri v. O'Neal,* No. 67142 (Mo. April 30, 1991).

The District Court, in adopting the Magistrate Judge's report and recommendation, determined that O'Neal had procedurally defaulted these claims in the state courts and that, as a result, they were procedurally barred from federal habeas review. Similarly, the District Court determined that O'Neal had not shown cause and prejudice to avoid the procedural bar, nor had he shown actual innocence of the crime of conviction or of the penalty imposed. In considering the "actual innocence" exception to the procedural bar otherwise found to exist, the Magistrate Judge thoroughly reviewed the merits of each of these claims and found all of them to be meritless; after *de novo* review the District Court adopted the Magistrate Judge's conclusions.

O'Neal argues that in finding these claims procedurally barred the District Court erred by overlooking the significance of his motion to the Missouri Supreme Court to recall its mandate, in which O'Neal alleged that his appellate counsel had been constitutionally ineffective in failing to raise these claims on direct appeal. He points out that, under Missouri law, claims of ineffective assistance of appellate counsel may properly be brought for the first time in a motion to recall the mandate. *See State v. Sumlin,* 820 S.W.2d 487, 489 (Mo.1991) (en banc). Our cases acknowledge this procedural rule. *See Hall v. Delo,* 41 F.3d 1248, 1250 (8th Cir.1994); *Jones v. Jerrison,* 20 F.3d 849, 856 (8th Cir.1994) ("In Missouri, a motion to recall the mandate is proper only when a state prisoner alleges that his appellate counsel was ineffective or argues that the appellate court's opinion directly conflicts with a decision of the United States Supreme Court."). O'Neal further argues that determination of whether his appellate counsel was ineffective necessarily involves consideration of the merits of the issues counsel failed to raise on direct appeal; that these issues therefore were fairly presented to the Missouri Supreme Court; and that, there having been no procedural default on these issues, we are free to consider them. We disagree.

O'Neal is correct that Missouri procedure ordinarily allows a claim of ineffective assistance of direct appellate counsel to be raised by motion to recall the appellate court's mandate. However, O'Neal's argument ignores the extreme delay that occurred here before he finally presented his ineffective assistance claim in his belated motion to recall the mandate. His direct appeal to the Missouri Supreme Court was decided in October 1986, with the court affirming his conviction and the sentence of death. He subsequently filed a motion in state court for post-conviction relief pursuant to Missouri Rule of Criminal Procedure 27.26. Post-conviction relief was denied in 1988 and that denial was affirmed by the Missouri Supreme Court in 1989; nowhere in those proceedings did O'Neal raise his ineffective-assistance-of-appellate-counsel claim. He then sought federal habeas relief in the District Court, and in October 1989 obtained a stay of execution pending resolution of the federal proceedings. Finding that O'Neal's amended federal habeas petition, which was filed in February 1990, contained claims that had not been exhausted in the state courts, the District Court in November 1990 ordered the federal habeas proceedings held in abeyance, with the stay of execution remaining in place, while O'Neal pursued his remedies in state court under Rule 91 as to his unexhausted claims. His petition for writ of habeas corpus pursuant to Rule 91 was filed in December 1990. The Rule 91 petition did not assert any claim of ineffective assistance of appellate counsel, and was denied by the Missouri Supreme Court on procedural grounds in March 1991. Only later, in April 1991, did O'Neal for the first time raise his claim of ineffective assistance of appellate counsel, doing so in his motion to recall the mandate. Against this backdrop of protracted litigation, with O'Neal having had earlier opportunities to raise this claim, the Missouri Supreme Court denied the motion, again resting its order on procedural grounds.

As the foregoing procedural history establishes, O'Neal could have raised his ineffective-assistance-of-appellate-counsel claim in a motion to recall the mandate anytime after the conclusion of his direct appeal to the Missouri Supreme Court in October 1986, yet he waited until April 1991 to do so, even though throughout this period he was actively engaged in litigation to overturn his conviction and sentence. We do not know whether this delay of some four-and-a-half years was inadvertent, or whether it was deliberate. Either way, we would be reluctant in these circumstances to second-guess the Missouri Supreme Court's determination that, as a matter of state law, the claim had been procedurally defaulted. For us to hold that O'Neal raised this claim in an appropriate and timely manner, despite the Missouri Supreme Court's rejection of the claim on procedural grounds, would entail the approval of unwarranted delay in asserting the claim and would encourage the deliberate withholding of such claims until the last possible moment. We therefore agree with the District Court that O'Neal's claims (F), (R), (H), and (DD) are procedurally barred from federal habeas corpus review.

We also agree with the District Court that O'Neal has failed to show cause and prejudice to overcome the procedural bar, and that the asserted grounds for relief do not satisfy the miscarriage of justice exception to the cause and prejudice requirement. In reaching these conclusions we necessarily have fully considered the merits of claims (F), (R), (H), and (DD). We conclude that all of them lack merit. Thus, even if these claims were not procedurally barred, they still would afford O'Neal no basis for habeas relief.

## VII.

For the reasons stated, we affirm the order of the District Court denying O'Neal's petition for a writ of habeas corpus.