Kirt WAINWRIGHT, Petitioner,

v.

Larry NORRIS, Director, Arkansas Department of Correction, Respondent.

No. PB–C–92–211.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Dec. 17, 1996.

John Wesley Hall, Jr., Walter Craig Lambert, E. Alvin Schay, Little Rock, AR, for Petitioner.

Olan W. Reeves, Arkansas Attorney General's Office, Little Rock, AR, for Respondent.

## ORDER DISMISSING PETITION

EISELE, District Judge.

Before the Court is Petitioner Kirt Wainwright's Petition for Writ of Habeas Corpus, requesting that the Court vacate Mr. Wainwright's sentence of death. The Court has concluded that it lacks subject-matter jurisdiction and, therefore, will dismiss the petition.

### I

### Background

Mr. Wainwright was convicted and sentenced to death for the capital murder of Barbara Smith, a convenience store clerk from Prescott. The Arkansas Supreme Court affirmed his conviction and sentence on May 29, 1990. *See Wainwright v. State,* 302 Ark. 371, 790 S.W.2d 420 (1990). The United States Supreme Court denied *certiorari* on March 4, 1991. *See Wainwright v. Arkansas,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991). Mr. Wainwright next sought state post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure, and, on January 13, 1992, that request was denied without a hearing. *See Wainwright v. State,* 307 Ark. 569, 823 S.W.2d 449 (1992).

After exhausting his state remedies, Mr. Wainwright filed his first petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254 on April 7, 1992. This Court conducted hearings on February 24–26, 1993, and the parties completed post-trial briefing on April 30, 1993. On September 29, 1994, the Court granted Mr. Wainwright's request for *habeas* relief with respect to the penalty phase of his trial. The Court concluded that the prosecutor's cross-examination relating to an Islamic text owned by Mr. Wainwright misleadingly tied Mr. Wainwright to the street gang known as the Bloods. The Court explained as follows:

> It is very clear to the Court what happened here. Not only did the prosecutor feed on what he admits was a sort of "gang hysteria" in the community at the time, but he sincerely bought into it himself. He got the idea in his head that this religious text was tied in some way to a notorious street gang, that Mr. Wainwright was a member of this dual-purpose organization (or that Mr. Wainwright believed himself to be such a member) and that Mr. Wainwright then had the temerity to get on the stand and state that his religious beliefs were the same as those of the prosecutor.

> The cross-examination of Mr. Wainwright did not serve any proper rebuttal purpose. It tended strongly to link Mr. Wainwright to a street gang and to generate in the jury the fear of gangs, thereby making Mr. Wainwright himself appear more dangerous and threatening. Mr. Wainwright's testimony that he was a Baptist and a Christian in no way opened the issue of gang membership.

> At some point during the hearings before this Court, Mr. Wainwright was asked if [the prosecutor] ever actually used the word "gang" when questioning him at trial. Mr. Wainwright's answer has the ring of truth: "He didn't have to."

> There was no evidence that the murder of Ms. Smith was in any way gang-related, or tied to the "Bloods." Furthermore, this evidence was not relevant to any aggravating circumstance alleged by the state. Its prejudicial effect is manifest. The Court is convinced that this evidence led the jury to believe that it was dealing with a larger criminal enterprise, not just a local convenience store murder. The Court is convinced that the penalty imposed would probably have been life without parole absent this prejudicial circumstance. The cross-examination was improper, and under the principles set forth in *Dawson v. Delaware,* violated Mr. Wainwright's First and Fourteenth Amendment rights. His death sentence cannot stand in light of such a violation, and must therefore be set aside.

*Wainwright v. Norris,* 872 F.Supp. 574, 619 (E.D.Ark.1994), *rev'd in part and aff'd in part sub nom. Wainwright v. Lockhart,* 80 F.3d 1226 (8th Cir.), *cert. denied,* — U.S.

——, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996). The Court rejected on the merits Mr. Wainwright's claims unrelated to the gang membership issue.

The United States Court of Appeals for the Eighth Circuit reversed in part and affirmed in part the Court's decision. *See Wainwright v. Lockhart,* 80 F.3d at 1234. The Eighth Circuit agreed that the prosecutor's questions relating to the Bloods served no proper rebuttal purpose and noted that "[a] defendant's membership in a gang cannot be raised as bad character evidence in the penalty phase of a capital proceeding when the evidence is not relevant to the rebuttal of any specific mitigating evidence. *Dawson v. Delaware,* 503 U.S. 159, 165–69, 112 S.Ct. 1093, 1098–99, 117 L.Ed.2d 309 (1992); *O'Neal v. Delo,* 44 F.3d 655, 661 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 129, 133 L.Ed.2d 78 (1995)." *Id.* However, the Eighth Circuit disagreed with the Court on the effect that the improper cross-examination had on the jury:

> Nevertheless, we disagree with the district court's conclusion that the questioning led the jury to believe it was dealing with a street gang. This conclusion is based upon nothing more than unfounded speculation. The prosecutor's bigoted views and improper motive in questioning Wainwright about the booklet were not communicated to the jury. Although some jury members had read pre-trial newspaper articles about Wainwright and some articles had erroneously reported Wainwright was a member of the Bloods street gang, "gangs" were not mentioned during voir dire or the trial. The jury heard the prosecutor use the term "blood," the proper name for a gang, in two questions, but Wainwright gave reasonable responses unrelated to gangs and explained another meaning for the term. Further, the booklet was never admitted, and the trial court instructed the jury it should disregard "[a]ny argument, statements, or remarks of attorneys having no basis in the evidence." The jury saw the booklet's cover with the word "blood," but in light of Wainwright's testimony about the booklet and the meaning of the term, we cannot say the jury would connect the booklet to a notorious street gang. In

> addition, neither side referred to the booklet in its closing argument, and Wainwright testified he did not subscribe to the beliefs in the booklet. In the context of the entire proceeding, we cannot say the two improper questions and display of the booklet's cover fatally infected the penalty phase and rendered it fundamentally unfair. *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir.1995).

*Id.* The Eighth Circuit affirmed the Court's rejection of Mr. Wainwright's remaining claims.

Judge Henley concurred *dubitante.* He wrote that he was "reluctant to accept" the prosecutorial misbehavior found by both this Court and the Eighth Circuit. *Id.* at 1235. However, he "decided to concur, with reservations, because the evidence against Wainwright was great and [he could not] say, on balance, that the sentencing proceeding was fundamentally unfair." *Id.*

On November 4, 1996, the United States Supreme Court denied Mr. Wainwright's petition for writ of *certiorari. See Wainwright. v. Norris,* —— U.S. at ——, 117 S.Ct. at 395. Governor Mike Huckabee then set January 8, 1997, as Mr. Wainwright's execution date. On November 29, 1996, Mr. Wainwright asked the Court to appoint him counsel under 21 U.S.C. § 848, and that request initiated *habeas corpus* proceedings in this Court. *See McFarland v. Scott,* 512 U.S. 849, 857, 114 S.Ct. 2568, 2573, 129 L.Ed.2d 666 (1994). The Court granted Mr. Wainwright's request, and, on December 12, 1996, Mr. Wainwright filed the instant *habeas* petition.

## II

### *The Petition*

In his petition, Mr. Wainwright argues that his death sentence was imposed in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Mr. Wainwright suggests that the State presented false evidence and argument to the jury by creating the false impression that Mr. Wainwright belonged to the Bloods gang. According to Mr.

Wainwright, that presentation violated his right to due process of law, as explained in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Mr. Wainwright submits that *Agurs* requires a court to vacate a sentence in the presence of " 'any reasonable likelihood that the false [evidence] could have affected the judgment of the jury.' " Petition for Writ of Habeas Corpus at p. 7 (quoting *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397). Mr. Wainwright asserts that this standard is less stringent than the standard applied by the Eighth Circuit when it evaluated his *Dawson v. Delaware* claim after this Court granted relief on that claim. Even if the prosecutorial misconduct found by this Court and by the Eighth Circuit did not, as the Eighth Circuit held, "fatally infect" the penalty phase of Mr. Wainwright's trial, Mr. Wainwright argues that it is clear that a reasonable likelihood exists that the improper cross-examination could have affected the judgment of the jury. Therefore, Mr. Wainwright requests *habeas* relief.

Because this Court concludes that, at this point, it lacks subject-matter jurisdiction, it will confront none of these questions and, therefore, expresses no opinion on whether Mr. Wainwright's petition is a "same claim" application. However, the Court will note that Mr. Wainwright has identified an interesting question: is a claim that was raised in a first petition but never adjudicated on its merits a new claim, a same claim, or neither type, but instead a type of claim not envisioned by the AEDPA? Although the Court considered the gang membership issue in Mr. Wainwright's first *habeas* proceeding, a review of the Court's opinion suggests that the specific theory raised in the instant petition went undecided. It is clear to the Court that, because Mr. Wainwright was granted relief in this Court, he did not need to press the Court for a statement on precisely what rule of law it had relied on. The Eighth Circuit opined that this Court had granted relief under the First and Fourteenth Amendments. However, it is apparent that both this Court and the Eighth Circuit referred to the standard announced in *Dawson v. Delaware* and not the standard announced in *United States v. Agurs.* That fact, according to Mr. Wainwright, shows that no court

has decided his *Agurs* claim, although that claim has been raised. Both this Court and the Eighth Circuit found that the prosecutor's presentation of the Bloods issue during the sentencing phase of Mr. Wainwright's trial was improper. However, the Eighth Circuit could not say that the improper questions and the display of the "Blood" booklet "fatally infected the penalty phase and rendered it fundamentally unfair." Mr. Wainwright now wants to raise the following question: would the Eighth Circuit have also concluded that there is no reasonable likelihood that the improper questions and the display of the booklet could have affected the judgment of the jury if it applied the *Agurs* standard. Mr. Wainwright asserts that a legal claim related to the gang membership issue was raised but not adjudicated and that, since that claim requires a lesser showing of prejudice than a *Dawson* claim, the Court now should take up and resolve that issue. *If* he is correct, his *habeas* petition could deserve serious consideration on its merits.

### III

### *The Antiterrorism and Effective Death Penalty Act of 1996*

 Procedural problems, however, confront Mr. Wainwright's presentation of his petition to the Court. On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (hereinafter the "AEDPA"). The AEDPA, *inter alia,* amended 28 U.S.C. §§ 2244, 2253, 2254, and 2255; Rule 22 of the Federal Rules of Appellate Procedure; and 21 U.S.C. § 848(q) and created special *habeas corpus* procedures in capital cases. Mr. Wainwright filed the instant petition nearly eight months after the AEDPA went into effect, and, therefore, the Court must apply the provisions of the new law. *See, e.g., Rosenberg v. Irvin,* 1996 WL 622212, *2 (E.D.N.Y.) (finding petitioner "clearly constrained by new requirements").

The AEDPA creates substantial difficulties for individuals who attempt to bring second or successive *habeas corpus* petitions. Spe-

cifically, § 2244 now provides, in relevant part, as follows:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> > (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> >
> > (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) *Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.*

28 U.S.C. § 2244 (emphasis added). Thus, because Mr. Wainwright has already pressed one *habeas* petition through the courts, the question of whether this Court may entertain the instant petition arises.[1]

Mr. Wainwright argues that the instant petition does not constitute a "second or successive application" within the compass of the AEDPA and that, therefore, the Court may exercise jurisdiction and decide the petition on its merits without an order from the Eighth Circuit. Mr. Wainwright cites the decision of the United States Court of Ap-

peals for the Second Circuit in *Camarano v. Irvin* for the principle that "the mere fact that a habeas petition has been previously filed does not automatically render a subsequent petition 'second or successive' within the meaning of the AEDPA." Petition for Writ of Habeas Corpus at p. 14 (citing 98 F.3d 44 (2d Cir.1996)). In *Camarano*, the Second Circuit held that "a petition filed after a prior petition is dismissed for failure to exhaust state remedies is not a 'second or successive' petition within the meaning of § 2244." *Camarano*, 98 F.3d at 47. According to Mr. Wainwright, he "raised or otherwise referenced" the issue presented in the instant petition "on no less than six occasions" during the life of his first *habeas* action. Petition for Writ of Habeas Corpus at p. 15. Mr. Wainwright submits, however, that the issue was never addressed. Mr. Wainwright argues that "[t]he point is that a habeas petitioner is entitled to one bite at the federal post-conviction apple. To say that a second habeas petition raising an issue that was raised but not addressed in the first round of habeas proceedings is a 'second or successive application' under the AEDPA based on the mere fact that it is *numerically* second flies directly in the face of that principle." *Id.* at p. 16 (emphasis in original).

The Court disagrees. Justice Stevens has indicated that the enactment of the AEDPA "increases the importance of making sure that the courts have a full and fair opportunity to consider the first federal petition filed by such prisoners." *Angelone v. Bennett*, —— U.S. ——, 117 S.Ct. 381, 136 L.Ed.2d 299 (1996) (Stevens, J., dissenting). Mr. Wainwright had that opportunity, and, for that reason, *Camarano* is distinguishable. The Court understands the Second Circuit's decision in *Camarano* to embody the principle that "no barrier to habeas review arises from the dismissal of a petition on procedural grounds without prejudice to refiling." *Camarano*, 98 F.3d at 46. In that case, the Second Circuit noted that the first *habeas* petition had been dismissed without preju-

---

**1.** The Court may consider *sua sponte* the issue of subject-matter jurisdiction because it goes to the power of the Court to render a decision under Article III of the United States Constitution. *See Williams v. Stegall*, 945 F.Supp. 145, 146

(E.D.Mich.1996) (citing *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978)).

dice and that the petitioner's opportunity for *habeas* review would be virtually foreclosed if it considered his petition second or successive. Unlike the petition in *Camarano,* the instant petition does not involve a "barrier to habeas review aris[ing] from the dismissal of a petition on procedural grounds without prejudice to refiling." *Camarano,* 98 F.3d at 46. Mr. Wainwright has not only had the opportunity for *habeas* review; this Court even granted his petition, only to be reversed by the Eighth Circuit. If the reasoning of the Second Circuit requires a finding that the instant petition is not a "second or successive petition," this Court cannot agree with that reasoning. The Second Circuit's reasoning elsewhere more properly addresses the issue before this Court; the instant petition "is a 'second or successive motion' within the meaning of [the statute] because it 'raises claims concerning the same conviction to which his prior [petition] was addressed.'" *Maragni v. United States,* 1996 WL 684429 (E.D.N.Y.1996) (quoting *Liriano v. United States,* 95 F.3d 119, 122 (2d Cir.1996) (discussing § 2255 petition)).

Mr. Wainwright cannot deny that the plain language of § 2244 indicates that he should move the Eighth Circuit for an order permitting this Court to consider his petition. Section 2244 refers very simply to "second or successive petitions." Any individual would have trouble arguing that the instant petition is not Mr. Wainwright's second petition for *habeas* relief. The punctuation of the statute, moreover, suggests that the Court should refrain from imbuing the word *second* with any arcane meaning. If the words *second* and *successive* were intended by Congress to have the same meaning, Congress should have set the word *successive* off with commas: "second, or successive," application. Rather, the statute indicates two types of applications: a second *or* successive application. Thus, even if Mr. Wainwright's petition is not legally successive, it is, beyond argument, his second petition. *See Rosch v. Parole Commission,* 89 F.3d 839, 1996 WL 328784, *4 (7th Cir.) (declaring that petitioner would have to seek authorization from court of appeals before filing "another" petition); *Stegall,* 945 F.Supp. at 146 (adopting plain language interpretation of § 2244 and

dismissing without prejudice second petition to allow petitioner to obtain necessary order from court of appeals); *Rosenberg v. Irvin,* 1996 WL 622212 at *2 n. 2 (indicating that "the new gatekeeping mechanism merely directs the successive petition to the court of appeals in the first instance").

▮ There can also be no doubt that the AEDPA "significantly limited the authority of the federal courts to entertain second or successive habeas corpus applications by state prisoners." *Angelone,* —— U.S. at ——, 117 S.Ct. at 381 (Stevens, J., dissenting). This Court believes that the gatekeeping provisions of the AEDPA envision all second petitions undergoing preliminary review by a court of appeals. *See Felker v. Turpin,* —— U.S. ——, ——, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996) (indicating that § 2244(b)(3)(A) transfers screening function from the district court to the court of appeals). Contrary to Mr. Wainwright's reasoning, the issue before the Court is not whether his petition constitutes an abuse of the writ of *habeas corpus.* The question, rather, is whether the petition is second or successive and, therefore, whether the AEDPA demands that he move the Eighth Circuit to permit this Court to review his petition. "In the terminology of habeas petitions, a 'successive' petition is one that only includes claims already asserted in a prior petition, while an abusive petition includes new claims that were not asserted in an earlier petition." *Grady v. Artuz,* 931 F.Supp. 1048, 1054 n. 2 (S.D.N.Y.1996) (citing *Schlup v. Delo,* 513 U.S. 298, 318–19 n. 34, 115 S.Ct. 851, 863 n. 34, 130 L.Ed.2d 808 (1995)). The United States Court of Appeals for the Seventh Circuit has reasoned as follows:

No matter how powerful a petitioner's showing, only this court may authorize the commencement of a second or successive petition. Unlike the former standard, under which a second petition could be pursued unless the government established that it was an abuse of the writ, see *McCleskey v. Zant,* 499 U.S. 467, 477, 494–95, 111 S.Ct. 1454, 1461, 1470–71, 113 L.Ed.2d 517 (1991), the new prior-approval device is self-executing. From the district court's perspective, it is an allocation of

subject-matter jurisdiction to the court of appeals. A district court must dismiss a second or successive petition, without awaiting any response from the government, unless the court of appeals has given approval for its filing.... A second or successive collateral attack may no more begin in the district court than a criminal prosecution may commence in the court of appeals.

*Nunez v. United States,* 96 F.3d 990, 991 (7th Cir.1996). The Seventh Circuit went on to note that "even when ... the abuse-of-the-writ standard supplies the substantive criteria, a prisoner who wants to commence a second or successive petition after April 23, 1996, still must obtain this court's permission." *Id.* The Court agrees with the Seventh Circuit and adopts its conclusions.

■ Under § 2244 as amended by the AEDPA, the Court lacks jurisdiction over Mr. Wainwright's petition. The Court, therefore, will dismiss Mr. Wainwright's petition without prejudice. If Mr. Wainwright wants this Court to decide the merits of his petition, he must move the Eighth Circuit for an order permitting the Court to do so. Some courts have decided that, when a litigant improperly files a second or successive petition in the district court, that court should transfer the petition to the appropriate court of appeals under 28 U.S.C. § 1631. *See, e.g., Liriano,* 95 F.3d at 123. Section 1631 provides that, "[w]henever a civil action is filed in a court ... and the court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." The Court disagrees that such a transfer is the proper action. Mr. Wainwright need only move the Eighth Circuit for an order, he does not—as a transfer would suggest—need to file a petition for writ of *habeas corpus* with that court. The Court has been advised that Mr. Wainwright will so move the Eighth Circuit, and, therefore, the Court will direct the District Court Clerk to forward the record in this matter to expedite the resolution of this pressing issue.

## IV

### *Conclusion*

IT IS THEREFORE ORDERED that Mr. Wainwright's Petition for Writ of Habeas Corpus be, and it is hereby, DISMISSED WITHOUT PREJUDICE for want of jurisdiction.

IT IS FURTHER ORDERED that the District Court Clerk send the record in this matter to the United States Court of Appeals for the Eighth Circuit in St. Louis.